Justice Johnson delivered the opinion of the Court.
In this case, the City of Houston maintains that it has governmental immunity from a suit by the Houston Municipal Employees Pension System. The trial court denied the City's plea to the jurisdiction, and the court of appeals affirmed in part and reversed in part. We agree with the trial court that the City's plea should be denied in full. Accordingly, we affirm the judgment of the court of appeals in part and reverse it in part.
I. Background
The appeal before us involves a relationship that is not working out well. The controversy concerns the City of Houston's creation of local government corporations to which it transferred some of its employees. Specifically at issue is the adoption of resolutions by the Houston Municipal Employees Pension System's Board of Trustees (the board) related to those employees, their status regarding the City's pension fund, and interpretation of the governing statute; and the Houston Municipal Employees Pension System's (the Pension System or System) attempts to enforce what it views as the City's obligation to make contributions to the pension fund. We begin with a brief review of the statute involved and a partial history of the conflict.
A. The Pension Statute
The Pension System was organized and operates under article 6243h of the Texas Revised Civil Statutes. It is a defined-benefit pension plan that provides retirement, survivor, and disability benefits for employees of the City. See TEX. REV. CIV. STAT. art. 6243h. Article 6243h applies only to cities with a population of greater than 2 million, id. § 1(4), and currently, Houston is the only city in Texas to which it *571 applies. The statute defines a "member" of the pension fund as an "active employee included in the pension system," except for statutorily ineligible employees. Id. § 1(13). An "employee" is "any [eligible] person ... who holds a municipal position[,] ... whose name appears on a regular full-time payroll of a city[,] ... and who is paid a regular salary for services." Id. § 1(11). Under the statute, the City must make contributions to the pension fund and pick up payments on behalf of employees. See id. §§ 8(a), (c), 8A. Pick up payments are contributions to the pension fund made by the City in lieu of direct contributions by the members; the City may "pick up" those contributions via a deduction from each member's salary. Id. § 8(c).
Article 6243h requires the City to provide information to the board so that it may administer the fund and provide benefits properly. See id. § 2(u). The board is granted broad authority to "interpret and construe" article 6243h. See id. § 2(x)(2). The statute includes an express mandate that "[t]he determination of any fact by the pension board's interpretation of this Act [is] final and binding on any interested party, including members, deferred participants, retirees, eligible survivors, beneficiaries, and the city." Id. § 2(y). The statute specifically allows the City and the Pension System to enter into a written meet-and-confer agreement (MCA) regarding pension issues and benefits. See id. § 3(n). The City and the Pension System entered into an MCA on July 1, 2011.
B. Prologue: Klumb v. The Pension System
Since its creation, the City's Convention and Entertainment Facilities Department has operated and maintained municipally owned properties such as theaters, convention centers, and parking lots. In May 2011, the City announced plans to transfer the Convention and Entertainment Facilities Department's 100 or so employees from the department into a local government corporation named the Houston First Corporation (HF Corporation). HF Corporation is city-controlled and tax-funded with a budget approved by the Houston City Council and a board appointed by the mayor. After the announcement, the Pension System's board adopted a resolution interpreting the definition of "employee" in article 6243h to include "a full-time employee of a Texas local government corporation ... controlled by the City, upon a determination by the External Affairs Committee of the Board of Trustees that such [local government corporation's] employees are Employees for purposes of the [Pension System] Plan." The External Affairs Committee is a standing committee of the board. The pension plan documents were amended to incorporate this construction of the term "employee."
The City then formed a nonprofit entity, the Houston First Foundation (HF Foundation), and notified the board that HF Foundation was to employ those employees originally set to be transferred to HF Corporation. The board shortly adopted another resolution restating its definition of "employee" and additionally providing that "employees of any entity controlled, directly or indirectly, by [the City] are considered Employees for purposes of membership in [the Pension System], unless the External Affairs Committee expressly determines otherwise." That resolution triggered action by the City to form a nonprofit corporation named Convention and Cultural Services, Inc. (CC Services), which was to operate in conjunction with the HF Foundation. HF Corporation was to provide convention and entertainment services to the City using CC Services employees, and who were in turn leased to HF Corporation. The City attorney explained *572 in a letter to the Pension System's executive director that following the transition of the convention department's employees to CC Services, the employees (1) would no longer be municipal employees or members of the Pension System, and (2) the City would not make contributions to the pension fund based on those employees' salaries. The External Affairs Committee of the board then adopted a resolution to the effect that these leased employees "would be in a control group and would remain as members of the plan."
The transfer of services and employees proceeded as planned by the City. A few employees who were eligible to retire did so and sought full retirement benefits from the Pension System on the basis that their employment with the City had ended upon their transition to CC Services. A few employees sought to defer their retirement, yet stop the Pension System from taking deductions from their paychecks, asserting that their being transferred to CC Services effected a termination of their employment with the City. Per its previous resolution, the External Affairs Committee determined that the transfer did not cause a separation from municipal service. These employees (the Klumb plaintiffs) sued the Pension System, challenging its board's authority to take such actions. The suit eventually reached this Court. See Klumb v. Hous. Mun. Emps. Pension Sys. , 458 S.W.3d 1 (Tex. 2015).
In this Court, the Klumb plaintiffs alleged violations of the Texas Constitution and breach of contract as well as ultra vires claims against board members who voted in support of the resolution altering the definition of "employee" as set out in section 1(11) of the statute and authorizing the External Affairs Committee to determine who qualifies as an "employee." Involved in that appeal was the provision of the MCA by which the parties had agreed the City could pay a lesser contribution rate (27.36%) than that required by article 6243h, section 8. The MCA contained the following provision:
Except for meet and confer decisions and personnel decisions, no committee shall have authority to make final approvals, but shall only make recommendations to the full board.
But the board's resolutions regarding the definition of "employee" provided that the External Affairs Committee had final authority to determine employee eligibility. And while section 3(k) of the statute permitted the board to delegate authority in the manner provided for in the resolutions, the Klumb plaintiffs contended that the MCA amended the statute and divested the board of the ability to delegate final decision-making authority to a committee. The Klumb plaintiffs sought monetary damages and a declaration that they were no longer City employees as defined in article 6243h. The Pension System countered with a plea to the jurisdiction, arguing that the trial court lacked subject matter jurisdiction because (1) the constitutional claims were facially invalid, (2) governmental immunity barred the breach of contract claims regarding the MCA and could not serve as the basis of an ultra vires claim, and (3) article 6243h precludes judicial review because the board's interpretations of the statute and determination of the facts at hand were "final and binding." See TEX. REV. CIV. STAT. art. 6243h, § 2(y). The City joined as to the ultra vires claims, generally aligning itself with the Klumb plaintiffs and seeking similar injunctive and declaratory relief. The trial court granted the Pension System's plea to the jurisdiction and the court of appeals affirmed. Klumb v. Hous. Mun. Emps. Pension Sys. , 405 S.W.3d 204, 228 (Tex. App.-Houston [1st Dist.] 2013), aff'd , 458 S.W.3d 1 (Tex. 2015).
*573 On review, this Court affirmed the court of appeals' judgment on the basis that the Klumb plaintiffs and the City failed to plead actionable ultra vires and constitutional claims against the Pension System and the board members. Klumb , 458 S.W.3d at 17. We concluded that the board did not act ultra vires when issuing its resolutions defining "employee" because the statute expressly authorized the board
to construe the statute, add language it deems necessary for the administration of the pension fund, and determine all eligibility questions and all other legal and factual matters pertaining to the fund's administration.
Id. at 10. Further, we stated that "[c]ourts may not review the board's actions in doing so absent a manifest conflict with express statutory terms." Id. As to the Klumb plaintiffs' assertion that the board acted ultra vires by delegating decision-making authority to the External Affairs Committee in violation of the MCA, we concluded that regardless of whether the MCA amended the statute, as the Klumb plaintiffs claimed, noncompliance with a contract, such as the MCA, does not give rise to an ultra vires claim. Id. at 12 (citing City of Houston v. Williams , 353 S.W.3d 128, 149 (Tex. 2011) ; Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855-57 (Tex. 2002) ). And so, "any claim that the pension board violated the July 2011 [MCA] is a breach-of-contract claim that cannot be maintained absent a waiver of sovereign immunity." Id. Pursuant to this Court's judgment, the trial court dismissed the suit.
C. The Current Controversy
Klumb did not bring closure. Shortly after we issued our decision in Klumb in 2015, the Pension System sent a letter to the City's Finance Department and to the director of the City's Convention and Entertainment Facilities Department, who was additionally serving as president of HF Corporation, president of HF Foundation, and director of CC Services. The System requested various types of employee data and designation of a point person to provide employee and payroll information. This request and two additional requests went unanswered. Further, the City did not make contributions to fund the pension plan for employees of HF Corporation, HF Foundation, and CC Services (collectively, the corporations). In June 2015, the Pension System sued the City, seeking a writ of mandamus to compel the City to (1) provide the required and requested employee information now and in the future and (2) allocate funding in the current and all future proposed city budgets for retirement contributions and pick up payments owed for employees of the corporations. The Pension System argued that the board's definition of "employee" was final and binding on the City under article 6243h and Klumb ; therefore, the City acted ultra vires by failing to perform the purely ministerial functions of providing the required employee information and by failing to budget for the retirement contributions. The Pension System further alleged that the failure to provide the requested employee information violated the Texas Public Information Act (TPIA).
In response, the City filed a counterclaim against the Pension System and a third-party action against the board members, alleging that the Pension System breached the July 2011 MCA and violated article 6243h by attempting to alter the definition of "employee." In the alternative, the City requested declaratory and injunctive relief to prohibit the inverse condemnation that it claimed would occur if the Pension System was successful. Additionally, the City alleged that the Pension System and the board violated the Open Meetings Act. The City also filed a *574 plea to the jurisdiction, arguing that governmental immunity barred the Pension System's claims under both article 6243h and the TPIA, in addition to asserting that the Pension System lacked standing to bring claims under article 6243h. The Pension System pled that it was immune from both suit and liability and moved for summary judgment.
Following a hearing, the trial court denied the City's plea to the jurisdiction. The City immediately appealed. The court of appeals affirmed in part, reversed in part, and rendered judgment in part. 513 S.W.3d 114, 135 (Tex. App.-Houston [14th Dist.] 2016). The court interpreted our decision in Klumb as holding that the Pension System's resolutions defining "employee" were not ultra vires acts; thus, eligible employees, per the definition, are members of the plan pursuant to section 1(13), and the City must meet the contribution requirements for those employees as those contributions are defined under sections 8(c) and 8(d). Id. at 124-29. However, the court concluded that the Pension System could not bring its ultra vires claims against the City to the extent that those claims sought to challenge noncompliance with the July 2011 MCA for the City's failure to make contributions to the fund based on the MCA's 27.36% contribution rate. Id. Again citing our opinion in Klumb , the court stated that "just as a claim that [the Pension System] failed to comply with the MCA is a breach-of-contract and not an ultra vires claim, so too is a claim that the City failed to comply with the MCA." Id. at 128. The appeals court remanded to the trial court with instructions to provide the Pension System a reasonable opportunity to properly plead ultra vires claims regarding the City's failure to make contributions at the statutory rate under section 8. Id. at 135. The court of appeals also determined that the Pension System had standing to bring its suit under article 6243h and had a valid TPIA claim for the City's failure to provide the requested employee information. Id.
In this Court, the City continues to argue that it is immune from suit. As to the Pension System's claim that the City acted ultra vires by failing to make the contributions and pick up payments, the City argues that the Pension System is now attempting to do what it opposed, and what this Court rejected, in Klumb : an ultra vires claim to enforce contractual duties contained within the MCA. And regarding the court of appeals' instructions to the trial court to permit the Pension System to replead its claim to assert that the City's failure to pay was an ultra vires act because it did not pay according to the statutory rate, the City contends that the MCA fully supplants the statute and therefore once an MCA has been entered into, neither party can assert an ultra vires claim based on the statutory provisions. The City also asserts that because the corporations' personnel are not "municipal employees" and therefore not members of the Pension System, the Pension System has no valid claims against the City.
As to the Pension System's TPIA claim, the City argues that the waiver of immunity in the TPIA applies only to a municipality's public information officer and not the municipality itself. Further, the City contends that the TPIA does not require the City to obtain the information from separate governmental entities, such as the corporations, where (1) those entities are independently subject to the TPIA and (2) the information requested is confidential, sensitive information, which is excepted from the TPIA's disclosure requirements. Finally, the City argues that the Pension System lacks standing because article 6243h, section 3(g) only authorizes the board, and not the Pension System itself, to assert claims.
*575 In response, the Pension System argues that the court of appeals incorrectly held that it does not have a valid ultra vires claim because (1) under article 6243h, section 3(n), MCAs are "enforceable against and binding on the city," and (2) where a statute requires that a government contract be performed in a certain way, an ultra vires suit to enforce compliance is permissible. The Pension System further counters that Klumb resolved the "employee" issue in the System's favor and collateral estoppel and res judicata prevent the City from relitigating it.
With regard to the TPIA claim, the Pension System asserts that the TPIA requires the City to produce the requested employee information, to which it has a right of access. The City has access to this information, and while independent TPIA actions could be brought against the corporations, that does not foreclose this action against the City. Finally, in response to the City's claim that it lacks standing, the Pension System asserts that article 6243h, section 3(g) does not prohibit it from bringing suit and that the board's broad authority permits delegation of its responsibilities.
II. Standard of Review
Sovereign immunity, or governmental immunity as it is called in relation to subdivisions of the State such as cities, defeats a trial court's subject matter jurisdiction unless the immunity has been waived. See Reata Constr. Corp. v. City of Dallas , 197 S.W.3d 371, 374 (Tex. 2006). Accordingly, it is properly asserted by a plea to the jurisdiction. See ids="8409239" index="17" url="https://cite.case.law/sw3d/197/371/#p374">id. We review a trial court's disposition of a party's plea to the jurisdiction de novo. Klumb , 458 S.W.3d at 8. In doing so, we consider the pleadings, factual assertions, and all relevant evidence in the record. Id. Looking at the plaintiff's intent, pleadings are construed liberally in favor of the plaintiff to determine whether the facts alleged affirmatively demonstrate the court's jurisdiction to hear the matter. Id. The trier of fact resolves the jurisdictional issue if evidence in the record raises a fact issue; however, the trial court rules as a matter of law if the evidence is undisputed or fails to raise a fact question. Id.
III. Analysis
The issue before us is whether the trial court has jurisdiction over the Pension System's claims against the City. But as noted above, there are several ways in which the City poses its challenge. We address them serially, although not in the order asserted by the City.
A. The Board's Standing to Sue
Article 6243h, section 3(g) provides that "[t]he pension board may institute legal action in the name of the pension board on behalf of the pension system." TEX. REV. CIV. STAT. art. 6243h, § 3(g). The City argues that only the board, not the Pension System itself, enjoys the requisite standing to assert claims under article 6243h. However, the court of appeals is correct that while granting authority to the board, this section does not prohibit the Pension System itself from instituting or participating in litigation. Id. As we recognized in Klumb , article 6243h grants the board very broad authority. Klumb , 458 S.W.3d at 10 ("The breadth of the pension board's authority under Article 6243h is inescapable."). As the Pension System argues, even if the board were the only entity with standing, article 6243h, section 3(k) authorizes the board to designate persons other than the board itself to carry out the board's responsibilities. See TEX. REV. CIV. STAT. art. 6243h, § 3(k) ("[T]he pension board ... may designate any person who is not a trustee, including *576 the executive director ..., to carry out the responsibilities of the pension board under this Act."); see also TEX. GOV'T CODE § 311.005 (" 'Person' includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity."); In re Transcon. Realty Inv'rs, Inc. , 271 S.W.3d 270, 272 (Tex. 2008) (stating the general rule that "persons" includes corporations and all other legal entities). Here, the board was authorized to pass a resolution granting authority to the Pension System's executive director to take any action necessary to obtain the City's compliance with the board's determinations. Given the foregoing, the Pension System has standing to bring this suit.
We next address the ultra vires issue.
B. Did the Pension System Bring Valid Ultra Vires Claims?
Cities, as political subdivisions of the State, have immunity from suits for damages unless the immunity has been waived. Reata Constr. Corp. , 197 S.W.3d at 374. Immunity "shield[s] the public from the costs and consequences of improvident actions of their governments." Tooke v. City of Mexia , 197 S.W.3d 325, 332 (Tex. 2006) ; see also City of El Paso v. Heinrich , 284 S.W.3d 366, 371 (Tex. 2009) ("[S]uits for contract damages against the state are generally barred by immunity ....").
Even if a governmental entity's immunity has not been waived by the Legislature, a claim may be brought against a governmental official if the official engages in ultra vires conduct. Hall v. McRaven , 508 S.W.3d 232, 238 (Tex. 2017). Plaintiffs in ultra vires suits must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." Heinrich , 284 S.W.3d at 372. "Ministerial acts" are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." Sw. Bell Tel., L.P. v. Emmett , 459 S.W.3d 578, 587 (Tex. 2015) (quoting City of Lancaster v. Chambers , 883 S.W.2d 650, 654 (Tex. 1994) ). Conversely, "discretionary acts" are those that "require the exercise of judgment and personal deliberation." Id.
Ultra vires suits are subject to certain qualifications. See Heinrich , 284 S.W.3d at 373. One is that merely failing to comply with a contract does not give rise to an ultra vires claim. Klumb , 458 S.W.3d at 12. Another is that retrospective monetary claims are generally barred. Heinrich , 284 S.W.3d at 374 (holding that because an ultra vires claim is against the State, "its remedies must be limited"). Thus, ultra vires claimants are only entitled to prospective relief. Id. at 374-77. If the relief is injunctive, then whether it is retrospective or prospective is measured from the date of injunction. Id. at 376. If the injury has already occurred and the only plausible remedy is monetary damages, an ultra vires claim will not lie. Id. at 374 (quoting City of Houston v. Williams , 216 S.W.3d 827, 828 (Tex. 2007) ).
In cases in which the alleged ultra vires conduct is governmental inaction, a court may issue a writ of mandamus compelling action to bring the official into conformance with the law. See Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs. , 540 S.W.3d 553, 560 (Tex. 2018) ; Hall , 508 S.W.3d at 237 ; see also Tex. Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 622 n.2 (Tex. 2011) ("Although Sefzik refused to apply the ultra vires label to his suit below, that is the underlying nature of his claim.... Sefzik ultimately wishes to compel a government official ... to perform some act that he *577 considers to be nondiscretionary (holding a hearing). That relief falls within the ultra vires rationale."). Mandamus will issue only to correct "a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." In re Essex Ins. Co. , 450 S.W.3d 524, 526 (Tex. 2014) (quoting Walker v. Packer , 827 S.W.2d 833, 839 (Tex. 1992) ). A writ of mandamus can be used to compel a public official to perform a "ministerial act," which, for purposes of mandamus, is an act where "the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." Anderson v. City of Seven Points , 806 S.W.2d 791, 793 (Tex. 1991).
1. Are the Employees "Members" of the Pension System?
The City is required to make contributions only for "members" of the Pension System. See TEX. REV. CIV. STAT. art. 6243h §§ 1(11), 8, 8A. So, the City is correct that the Pension System's case turns on whether the corporations' personnel are "employees" and thus "members" of the Pension System under the statute. Id. § 1(11) (defining "employee"); id. § 1(13) (defining "members" as active employees except for those statutorily ineligible). If they are not members, then the City has no duty to make payments on their behalf and is not acting ultra vires by failing to do so.
The City argues that the corporations' personnel are not "members" of the Pension System and that contrary to the Pension System's claim, the Court in Klumb did not decide otherwise. According to the City, Klumb only addressed the Pension System's statutory authority. The City's argument is without merit. As we explained in Klumb :
The breadth of the pension board's authority under Article 6243h is inescapable. As it pertains to the matter at hand, the statute expressly authorizes the pension board to construe the statute, add language it deems necessary for the administration of the pension fund, and determine all eligibility questions and all other legal and factual matters pertaining to the fund's administration. Courts may not review the board's actions in doing so absent a manifest conflict with express statutory terms. That is not the case here because (1) the definition of "employee" is composed of essential terms that are undefined and (2) the supplemental language the board adopted neither inherently nor patently conflicts with the terms of the statute. We therefore conclude that, as a matter of law, the pension board did not act without legal authority in interpreting the term "employee" to include "a full-time employee of a Texas local government corporation ... controlled by the City, upon a determination by the External Affairs Committee of the Board of Trustees that such [local government corporation's] employees are Employees for purposes of the [Pension System] Plan." The board's additional explication of the definition as including "employees of any entity controlled, directly or indirectly, by [the City]" is also well within the board's discretionary authority. Absent a conspicuous and irreconcilable conflict, any further consideration of the matter would impermissibly encroach on the unreviewable, discretionary authority afforded to the board under Article 6243h.
Klumb , 458 S.W.3d at 10-11 (emphasis added). There is no substantive difference between saying that the board did not act ultra vires when interpreting "employee" to include the corporations' personnel, and directly saying that those individuals are *578 employees pursuant to the board's resolutions. The board had authority to define the term and did so. To reiterate what we said in Klumb , under article 6243h, and per the final and binding board resolutions defining "employee," the corporations' personnel are employees and therefore members of the Pension System unless otherwise ineligible under statutory requirements. And the City does not contend that the personnel are otherwise ineligible under the statute. See TEX. REV. CIV. STAT. art. 6243h, § 4.
The City asserts that even if the personnel at issue are members of the Pension System, the Pension System's ultra vires claims against it are barred by immunity because the Pension System (1) seeks to enforce contractual duties under the MCA, and noncompliance with a contract does not give rise to an ultra vires claim; (2) can maintain ultra vires claims only where there is no adequate remedy by law; (3) does not seek to impose duties imposed by law but complains only about discretionary matters; (4) seeks retrospective relief; and (5) made claims that are now moot because of recent statutory amendments prohibiting agreed deviations from statutory requirements regarding the City's contribution rate and amounts.
We address the above arguments next.
2. Are the Ultra Vires Claims for Breach of Contract?
The City asserts that the Pension System's ultra vires and mandamus claims are barred because they seek to enforce either contractual duties under the MCA or statutory duties that have been supplanted by the MCA. The City argues and the court of appeals held, 513 S.W.3d at 128-29, that our holding in Klumb precludes the Pension System from bringing an ultra vires claim based on the MCA: "Meet-and-confer agreements are written contracts, and regardless of whether the parties deem the provisions of the contract to be an 'amendment' of the statute, noncompliance with a contract does not give rise to an ultra vires claim." Klumb , 458 S.W.3d at 12.
The Pension System argues that under Heinrich , "where a statute or the constitution requires that government contracts be made or performed in a certain way, leaving no room for discretion, a suit alleging a government official's violation of that law is not barred, even though it necessarily involves a contract." Heinrich , 284 S.W.3d at 371. According to the Pension System, in providing that MCAs shall be "enforceable against and binding on" the City, article 6243h requires that MCAs be performed in a certain way: in accordance with their terms. See TEX. REV. CIV. STAT. art. 6243h, § 3(n). The System maintains that when Klumb was decided, the statute did not make MCAs "enforceable against and binding on" the Pension System, so Klumb is therefore distinguishable.
We disagree with the Pension System that under a statute providing a contract is "binding and enforceable," the contract must be "performed in a certain way" such that an ultra vires claim can be brought to enforce it. We have yet to expand on our statement in Heinrich regarding statutes requiring that a government contract be "performed in a certain way." But we disagree that because a statute authorizes a governmental entity to enter into contracts and that such contracts will be binding on it, the statute requires such contracts to be performed in a particular way. Such an approach would threaten to cause the exception in Heinrich -permitting an ultra vires claim where a statute or the constitution requires that government contracts be made or performed in a certain way-to swallow the rule in Klumb that noncompliance with a contract does not give rise to an ultra *579 vires claim. The Pension System does not point to specific language in article 6243h that requires the MCA to be performed in a certain way. Thus, we agree with the City that the Pension System cannot bring an ultra vires claim to enforce compliance with the MCA.
However, the System also argues that even if it cannot seek ultra vires relief for the City's failure to comply with the MCA, the court of appeals' decision to remand for it to replead its claims was still erroneous. The Pension System posits that in remanding the case with instructions to allow it to replead, the court suggested that the System could seek contributions at the rate contained in the statute, but not the MCA. See 513 S.W.3d at 128-29 (holding that the Pension System's ultra vires claims were barred "[t]o the extent" they challenge the City's contribution failures based on the MCA's contribution rate). But, the System continues, the statutory contribution rate is higher than the rate contained in the MCA. And because litigants can seek less than the maximum amount that could be claimed by law, the System was entitled to seek recovery at a lower rate than that in the statute.
The City argues in response that Klumb held the statute provides MCAs as an "alternative mechanism[ ]" for resolving pension issues so the MCA has supplanted the statute. Klumb , 458 S.W.3d at 11. The City points to the following language in Klumb :
Section 3(n) of the statute[, which provides for the execution of MCAs,] authorizes, but does not require, the pension board to enter into a written agreement with the City regarding pension and benefit issues. See TEX. REV. CIV. STAT. ANN. art. 6243h, § 3(n) ("[T]he pension board may enter into a written agreement with the city regarding pension issues and benefits." (emphasis added) ). Section 3(n) does not purport to constrain the board's authority under section 2(x) [to interpret article 6243h ]; it merely provides an alternative mechanism for the board to resolve pension issues. When the pension board and the City agree on a pension issue, the statute allows them to execute an enforceable contract to that effect. When they cannot agree, the statute makes the board's determinations of fact and statutory interpretations "final and binding."
Id. Therefore, according to the City, it would make little sense to construe the statute as requiring compliance with its provisions where MCA provisions deviate from the particular provisions; rather, when an MCA alters the statute's terms, those statutory terms become supplanted and superseded by the MCA. The City concludes that immunity thus bars the Pension System's ultra vires and mandamus claims alleging violations of statutory duties because the duties in question are governed only by contract-the MCA. We disagree with the City.
Here, article 6243h provides, in pertinent part,
[T]he pension board may enter into a written agreement with the city regarding pension issues and benefits. The agreement must be approved by the pension board and the governing body of the city and signed by the mayor and by the pension board or the pension board's designee. The agreement is enforceable against and binding on the pension board, the city, and the pension system, including the pension system's members, retirees, deferred participants, beneficiaries, eligible survivors, and alternate payees. Any reference in this Act to an agreement between the city and the pension board or pension system is a *580 reference to an agreement entered under this subsection.
TEX. REV. CIV. STAT. art. 6243h, § 3(n).
The construction of a statute is a legal question for courts, subject to de novo review. City of Rockwall v. Hughes , 246 S.W.3d 621, 625 (Tex. 2008). Our goal in construing statutes is to "ascertain and give effect to the Legislature's intent as expressed by the language of the statute." McIntyre v. El Paso Indep. Sch. Dist. , 499 S.W.3d 820, 834 (Tex. 2016) (quoting Hughes , 246 S.W.3d at 625 ). There is nothing in the statute indicating legislative intent for MCAs to supplant statutory provisions. As demonstrated here, MCAs may lessen the City's burden to make contributions to the pension fund, but if the City chooses not to honor its agreements, its obligations under the statute do not simply disappear.
Although the Pension System cannot bring an ultra vires claim to enforce the MCA, we agree with the Pension System that the court of appeals erred by requiring it to replead. In its pleadings, the System sought a writ of mandamus "compelling Defendants to allocate funding in the current and all future proposed City budgets to include contributions owed for [the corporations'] employees' salaries." It further pled that " Article 6243h... requires the City to make periodic payments to the pension fund in an amount that is based on the combined salaries of [the Pension System's] 'members,' who have been judicially confirmed to include all [the corporations'] employees," and that "[b]y failing to perform these purely ministerial acts required by Article 6243h, Defendants are acting ultra vires ."
The Pension System pled a valid ultra vires action for the City's failure to comply with article 6243h. The statute requires the City to make payments to the pension fund. Even though it requested a writ of mandamus compelling the City to provide the payments at the lower rate provided for in the MCA, the System was not required to seek the maximum amount allowed by the statute. Nor did the MCA relieve the City from its statutory obligation to make payments.
3. Does the Pension System Have Another Adequate Alternate Remedy?
As an extraordinary remedy, mandamus is available only in limited circumstances. Walker , 827 S.W.2d at 840. It is available "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." Id. (quoting Holloway v. Fifth Court of Appeals , 767 S.W.2d 680, 684 (Tex. 1989) ). "Adequate," which we have termed the "operative word," does not have a comprehensive definition. In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 136 (Tex. 2004). Instead, it is "simply a proxy for the careful balance of jurisprudential considerations," which implicate both public and private interests. Id. ; see also Rivercenter Assoc. v. Rivera , 858 S.W.2d 366, 367 (Tex. 1993) ("Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles.").
The City argues that the Pension System's ultra vires claims seeking mandamus relief are barred because the System has another adequate remedy by law: a breach of contract claim for the City's violation of the MCA. See In re Essex Ins. , 450 S.W.3d at 526 (holding that mandamus relief is only available when "there is no other adequate remedy by law"). The Pension System counters that a breach of contract claim is not an adequate remedy because the City has asserted that it would be immune from such a claim. The City was reasonably firm at oral argument regarding *581 its position on whether it has asserted, or will assert, that it is immune from such a claim as the Pension System argues. The City firmly said that it has yet to decide what its position is, but it plans on making a decision at some point in the future. That position conflicts with the City's plea to the jurisdiction, in which it said that to the extent the Pension System's claims were substantively breach of contract claims, the City was immune from them.
We give credence to the City's trial court pleadings. The question thus becomes whether a breach of contract claim by the Pension System, which the City maintained in its trial court pleadings would be barred by immunity, constitutes an adequate remedy for purposes of mandamus relief in an ultra vires suit.
The City's position, substantively, is: (1) if the Pension System had refused to attempt to work out its conflict with the City by entering into the MCA and the City then failed to abide by article 6243h and make payments to the pension fund, the Pension System could have sued the City on an ultra vires claim and obtained relief if it prevailed; (2) but because the Pension System worked with the City to try to resolve their conflicts and entered into an MCA, then the Pension System can no longer assert an ultra vires claim for the City's failure to comply and its only remedy is a breach of contract claim; (3) yet, a breach of contract claim, according to the City's pleadings in the trial court, which it did not disown at oral argument, is barred by immunity. If the Pension System were to be frustrated with the City's litigation conduct, its frustration would be understandable.
The Legislature specifically provided that the City and the Pension System can enter into MCAs but did not require them to do so. See TEX. REV. CIV. STAT. art. 6243h, § 3(n) (stating that "the pension board may enter into a written agreement with the city regarding pension issues and benefits" (emphasis added) ). If we were to hold, as the City invites us to, that entering into an MCA leaves the System with no remedy to enforce its terms, no MCAs would follow in the future. We cannot conceive of the Legislature intending such a nonsensical result. We conclude, contrary to the City's position, that under these circumstances, the Pension System does not have an adequate remedy by law.
4. Do the Claims Involve Discretionary Matters?
The City next asserts that the Pension System's ultra vires claims are barred because they do not seek to enforce ministerial duties, but rather, the claims are as to discretionary matters. See Heinrich , 284 S.W.3d at 372 ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."). The City asserts that the allocation and appropriation of funds are necessarily discretionary matters and therefore ultra vires and mandamus claims are barred because it has discretion to determine how to secure or structure funding for the pension payments. The City cites Kassen v. Hatley for the proposition that governmental resource allocation is discretionary in nature. See 887 S.W.2d 4, 10 (Tex. 1994) ("At times, government doctors and nurses must decide how to allocate a scarce pool of state resources among possible recipients."). The City claims that it has discretion to decide, for example, whether to provide for the payments in its budget or *582 instead issue bonds for the contribution payments.
The Pension System's position, with which the court of appeals agreed, is that article 6243h requires the City to provide pension payments, which is a ministerial as opposed to a discretionary duty.
We agree with the Pension System and the court of appeals that the System is not seeking relief regarding how the payments must be made, but, rather, whether the payments must be made. And the statute mandates that contribution payments must be made by the City. Article 6243h states that the City "shall provide full and timely information" to the Pension System and "shall make contributions" to the Pension System. TEX. REV. CIV. STAT. art. 6243h, §§ 2(u), 8A(a). "Use of the word 'shall' " in a statute "evidences the mandatory nature of the duty imposed." Emmett , 459 S.W.3d at 588.
The controversy here is not about how the City must make the payments, only whether it must. See Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004) ("When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent."). The statute leaves no room for the City to exercise judgment regarding whether the payments must be made. See Emmett , 459 S.W.3d at 587. Accordingly, we hold that article 6243h creates mandatory duties and defines them with sufficient clarity to support the Pension System's ultra vires and mandamus claims.
5. Is the Pension System Seeking Retrospective Relief?
The City next challenges the holding of the court of appeals that the Pension System sought prospective, not retrospective relief. See Heinrich , 284 S.W.3d at 374 (stating that "retrospective monetary claims are generally barred by immunity"). As the City points out, the System did not specifically allege in its petition whether it seeks relief for past periods, future periods, or both. In its conclusion and prayer in its pleadings, the System requested it be awarded
[a] writ of mandamus compelling [the City] to allocate funding in the current City budget to provide the statutorily required payments of 27.36% of the payroll of the [corporations'] employees, to make such payments to [the Pension System] in accordance with the allocation, to include in all future proposed City budgets the contributions owed for [the corporations'] employees' salaries as members of [the Pension System], and to pick up and pay any biweekly contributions made on their behalf.
The City argues the Pension System's pleadings are broad enough to be construed as requesting both payments and allocations of amounts allegedly owed for past periods, which would necessarily include all past periods before the then-current fiscal year.
The System responds that it is seeking payments for what it is owed on the date of judgment and in the future.
Under Heinrich , prospective relief is permissible so that statutes specifically directing payment can "be judicially enforced going forward." 284 S.W.3d at 376. Further, we construe pleadings liberally to determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. Miranda , 133 S.W.3d at 226. Construing the pleadings liberally, the Pension System asks for the statute to be enforced going forward and thus is seeking prospective relief.
*583 6. Are the Pension System's Claims Moot?
The City argues that jurisdiction has been lost, if it ever existed, because the System's claims are now moot due to 2017 amendments to Article 6243h. One of the amendments brought the City's unfunded liability current to July 1, 2016. See TEX. REV. CIV. STAT. art. 6243h, §§ 1(11-g), 8. Under the amendments, any "unfunded actuarial accrued liability" for the fiscal year ending June 30, 2016, or for each subsequent year is treated as part of the City's "legacy liability." Id. § 1(11-g). The amendments provide that the legacy liability is to be amortized over a thirty-year period. Id. § 8. Also under the amendments, the City is no longer permitted under an MCA to pay a lower contribution rate than the one found in the statute. Id. § 3(o)(4).
The City first argues that all payments for periods before the amendment's effective date constitute retrospective relief. However, as explained above, we disagree that the Pension System seeks retrospective relief by asking that the City be directed to comply with its current obligations and seeking that the statute be enforced as of the date of judgment.
The City next argues that the Pension System's suit is moot because any payments for future periods based on the contribution rate found in the MCA are barred because the statute prohibits the parties from altering the statutory contribution rate. Although the City may be correct that the amendments no longer allow a lower contribution rate under an MCA, as we held above, the Pension System is entitled to sue to enforce the statute for the City's failure to make contributions under article 6243h. The amended statute still provides that the City "shall make contributions to the pension system," id. § 8A(a) (emphasis added), so the City is still required to make payments under the statute regardless of whether a lower contribution rate under the MCA is barred. The City has not claimed that it has made any pension system contributions for the corporations' personnel, which is what the Pension System is seeking in its suit. We therefore conclude that the case is not moot.
C. The Public Information Act Claim
Finally, we turn to the City's assertion that the Pension System's claims for information pursuant to the TPIA are barred because (1) the TPIA only allows a suit against the City's public information officer and not the City itself, (2) the TPIA does not require the City to obtain information from another entity that is subject to the TPIA, and (3) the requested information is excepted from disclosure.
Inherent and necessary to the proper and effective administration of the Pension System is access to relevant employee and payroll data. See id. § 8 (outlining detailed calculations for member contributions based on several factors including dates of employment and salary); id. § 8A (outlining detailed calculations for City contributions based upon sever al factors including the combined salaries paid to all members). Following our decision in Klumb confirming the board's authority to define "employee" as including employees of the corporations, the City did not respond to the Pension System's repeated requests for employee information and payroll information as to those employees. The TPIA provides that "a requestor may file suit for a writ of mandamus compelling a governmental body to make information available," thus clearly waiving immunity from these particular suits. TEX. GOV'T CODE § 552.321(a). Accordingly, the Pension System sought mandamus compelling *584 the City to disclose the requested information.
The City argues that according to A & T Consultants, Inc. v. Sharp , its public records officer, not the City itself, is the proper defendant. 904 S.W.2d 668, 681 (Tex. 1995) (stating that "a literal application of the mandamus provision is thus unworkable" because a "governmental body has no duty to perform what a writ of mandamus would order-the disclosure of public records" (emphasis added) ). The City contends that the waiver of immunity granted by the TPIA does not extend to the City but only allows a suit against its public records officer. Additionally, the City asserts that the term "governmental body" within section 552.321 is expressly defined to include a "municipal governing body" but does not include a municipality itself. See TEX. GOV'T CODE § 552.003(A)(iii) ; see also id. § 552.003(A)(iv). We disagree.
In Sharp , we concluded that the comptroller was "the proper party" against whom mandamus relief should be sought under section 552.321 because the comptroller had the legal obligation to produce the public records for the governmental body. Sharp , 904 S.W.2d at 672-73, 681. But we also noted that the language of this section specifically authorizes mandamus relief against the governmental body itself. Id. We suggested that the Legislature might "take another look" at section 552.321 but plainly acknowledged that, generally, "[t]his discrepancy can be overlooked in most cases, and courts can treat petitions for writ of mandamus against governmental bodies and against public records officers interchangeably." Id. While "in a few proceedings the exact identity of the respondent matters for the purposes of jurisdiction," the general rule applies in most cases. Id.
We agree with the court of appeals that the identity of the respondent in this case does not matter for jurisdictional purposes. 513 S.W.3d at 131. The Pension System may seek mandamus under the TPIA against either the City or its public information officer.
We also disagree with the City's argument that the TPIA's reference to a "governmental body," which includes a "municipal governing body," does not include the municipality itself. See TEX. GOV'T CODE §§ 552.003(1)(A)(iii), .321(a). The City cites no support for its position and we have previously recognized cities as governmental bodies under the TPIA. See, e.g. , Kallinen v. City of Houston , 462 S.W.3d 25, 27-28 (Tex. 2015) ; City of Garland v. Dall. Morning News , 22 S.W.3d 351, 358 (Tex. 2000) ; see also City of Dallas v. Dallas Morning News, LP , 281 S.W.3d 708, 714 (Tex. App.-Dallas 2009, no pet.) ("The City is a governmental body as defined under the Act." (citing TEX. GOV'T CODE § 552.003(1)(A)(iii) ) ). Therefore, the City is a governmental body against which a requestor may seek enforcement under section 552.321(a).
The City's additional arguments do not alter our foregoing analysis. While we agree that the corporations are themselves subject to the TPIA, the Pension System is not precluded from seeking the requested information from the City. Neither the TPIA nor article 6243h, section 2(u) contain any requirement that where multiple governmental entities possess the requested information, the suit must be brought against one entity in particular. And the System is correct that where the City has a right of access to the corporations' information, the City's TPIA obligations extend to that information.
Finally, the City asserts that the Pension System seeks confidential information that is excepted from disclosure. The TPIA contains a process for asserting *585 an exception to disclosure, which involves seeking a determination from the attorney general as to whether the information is excepted. See TEX. GOV'T CODE § 552.301. However, if the governmental entity does not request an attorney general opinion and does not provide the requested public information, "the information requested in writing is presumed to be subject to required public disclosure and must be released unless there is a compelling reason to withhold the information." Id. § 552.302.
The City does not claim to have either requested a decision from the attorney general or provided the information; therefore, the Pension System's TPIA suit is proper. However, we further agree with the court of appeals that the System's suit is proper only as to the City and not as to the additional named defendants. The TPIA mandamus actions may not be maintained against defendants beyond the governmental body and its public records officer.
IV. Conclusion
We affirm in part and reverse in part. We reverse the court of appeals' judgment to the extent it reversed the trial court's order as to the Pension System's ultra vires claims related to the City's contribution failures. We affirm the court of appeals' judgment with respect to all other issues. We remand the case to the trial court for further proceedings.