

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-25-00331-CV

Richard **MONTELLANO**,
Appellant

v.

Gina Ortiz **JONES**, in Her Official Capacity;  Sukh Kaur, in Her Official Capacity; Jalen McKee-Rodriguez, in His Official Capacity; Phyllis Viagran, in Her Official Capacity; Edward Mungia, in His Official Capacity; Teri Castillo, in Her Official Capacity; Ric Galvan, in His Official Capacity; Marina Alderete Gavito, in Her Official Capacity; Ivalis Meza Gonzalez, in Her Official Capacity; Misty Spears, in Her Official Capacity; Marc Whyte, in His Official Capacity; Erik Walsh, in His Official Capacity; and Michael Shannon, in His Official Capacity,
Appellees

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2021CI22967
Honorable Christine Vasquez Hortick, Judge Presiding

Opinion by: Lori I. Valenzuela, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              Irene Rios, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: January 21, 2026

AFFIRMED

In this appeal, appellant Richard Montellano challenges the trial court's order granting the

plea to the jurisdiction filed by appellees Gina Ortiz Jones, Sukh Kaur, Jalen McKee-Rodriguez,

Phyllis Viagran, Edward Mungia, Teri Castillo, Ric Galvan, Marina Alderete Gavito, Ivalis Meza

Gonzalez, Misty Spears, Marc Whyte, Erik Walsh, and Michael Shannon. Montellano alleges that appellees, officials for the City of San Antonio (the "City"), acted ultra vires by failing to implement a statutorily required relocation assistance program benefitting individuals like himself when public nuisance abatement orders issued by the City's Building Standards Board ("BSB") arising from code violations or a demolition program lead to the demolition of their homes. We hold that the statute's unambiguous language and context limit its applicability to the eminent domain environment—that is, cases in which a government entity will gain possession or obtain the right to use the property in question. Because the record shows the City would not gain possession or the right to use Montellano's property as designated in the statute, under these circumstances, we affirm the judgment of the trial court.

### BACKGROUND

This dispute concerns a property located on the east side of San Antonio, owned in part by Montellano. Montellano resides in a house on the property. In October 2017, employees of the City's Development Services Department began visiting Montellano's house, eventually classifying it as a dangerous premise due to its dilapidated form. The City outlined the steps necessary for Montellano to render his house non-dangerous and provided him access to resources. Montellano took some steps to comply with the City's instructions; however, ultimately, in December 2020, the BSB determined that Montellano's house was a public nuisance in need of abatement. Due to the condition of the house, the BSB additionally "found that repair of the structure was not feasible" and "ordered that the structure be demolished and the premises vacated within thirty days." Montellano did not appeal the BSB order.[1]

---

[1] By agreement, the BSB order was stayed pending the resolution of this litigation.

Thereafter, in November 2021, Montellano filed this lawsuit against appellees in their official capacities. Montellano claimed that appellees failed to comply with section 21.046 of the Texas Property Code because they had not established a relocation assistance program to help him and others in similar situations. *See generally*, TEX. PROP. CODE § 21.046. Located in the eminent domain chapter of the Property Code, section 21.046 generally requires a government entity to implement a relocation assistance program that complies with federal law. *See id.* Montellano argued that by not complying with the Property Code, appellees had "failed to perform a purely ministerial act, and therefore [] acted ultra vires."

Appellees subsequently filed a plea to the jurisdiction, arguing that section 21.046 does not apply to nuisance abatements adjudicated by the BSB. Instead, appellees contended that section 21.046 applies to situations in which eminent domain power is exercised, such as condemnation proceedings and all property purchases by the City. Therefore, because section 21.046 does not apply to nuisance abatement adjudications, appellees aver that they did not have a duty to implement a relocation assistance program for individuals displaced by BSB orders, as alleged by Montellano. Accordingly, appellees concluded they could not have acted ultra vires and are entitled to immunity. After a hearing, the trial court granted appellees' plea to the jurisdiction. Montellano now appeals.

## STANDARD OF REVIEW

"Sovereign immunity, or governmental immunity as it is called in relation to subdivisions of the State such as cities, defeats a trial court's subject matter jurisdiction unless the immunity has been waived." *City of Houston v. Hous. Mun. Emp. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Subject-matter

jurisdiction is a question of law; accordingly, we review de novo a trial court's ruling on a plea to the jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

Montellano, as the plaintiff, bears the initial burden of alleging facts that affirmatively demonstrate the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

Furthermore, because this case hinges on the parties' conflicting interpretations of statutory text, we must construe the statute with the primary objective "to give effect to the Legislature's intent." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). "To discern that intent, we begin with the statute's words." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." *Id*. "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Id*. "And if a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *Id.* "We further consider statutes as a whole rather than their isolated provisions." *Id*. "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not

chosen." *Id*. "If the text's meaning is unambiguous, we do not resort to extrinsic aids or special rules of construction." *Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024).

**APPLICABLE LAW AND ANALYSIS**

*A. A Proper Ultra Virus Claim Survives Immunity*

"Even if a governmental entity's immunity has not been waived by the Legislature, a claim may be brought against a governmental official if the official engages in ultra vires conduct." *Houston Mun. Emp. Pension Sys.*, 549 S.W.3d at 576. "Plaintiffs in ultra vires suits must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* (internal quotation marks omitted). "'Ministerial acts' are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id.* (internal quotation marks omitted). "Conversely, 'discretionary acts' are those that require the exercise of judgment and personal deliberation." *Id.* (internal quotation marks omitted).

In this case, Montellano sued appellees, officials for the City, in their official capacity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009) (explaining ultra vires claims can only be brought against city officials in their official capacity). Therefore, if appellees, as City officials, are charged with implementing a relocation assistance program under section 21.046 as Montellano alleges, and failed to do so, an ultra vires claim may be meritorious, and the trial court erred in dismissing Montellano's case. *See id*.

We bear in mind that our responsibility is to remain focused on the narrow question before us, not the merits of the case. Stated another way, if we determine that section 21.046 applies to the City as alleged by Montellano, City officials have a mandatory duty to construct and implement a relocation assistance program in accordance with the statute. However, even if we reach this

disposition, we are not deciding how the relocation assistance program must be facilitated. *See Houston Mun. Emp. Pension Sys.*, 549 S.W.3d at 582. ("The controversy here is not about *how* the City must make the payments, only whether it *must*.") (emphasis added).

B. *Texas Property Code Section 21.046 and the Parties' Interpretations*

As relevant here, section 21.46 provides the following:

(a) A department, agency, instrumentality, or political subdivision of this state shall provide a relocation advisory service for an individual . . . that is compatible with the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. 4601, *et seq*.

(b) This state or a political subdivision of this state shall, as a cost of acquiring real property, pay moving expenses and rental supplements, make relocation payments, provide financial assistance to acquire replacement housing, and compensate for expenses incidental to the transfer of the property if an individual . . . is displaced in connection with the acquisition.

(c) A department, agency, instrumentality, or political subdivision of this state that initiates a program under Subsection (b) shall adopt rules relating to the administration of the program.

(d) Neither this state nor a political subdivision of this state may authorize expenditures under Subsection (b) that exceed payments authorized under the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C.A. 4601, *et seq*.

(e) If a person . . . moves personal property[] or moves from the person's dwelling as a direct result of code enforcement, rehabilitation, or a demolition program, the person is considered to be displaced because of the acquisition of real property.

TEX. PROP. CODE § 21.046. Subsection (e) formulates the crux of Montellano's argument. Namely, Montellano asserts that the City's use of code enforcement, through the BSB order to demolish his home because it is a public nuisance in need of abatement, is an acquisition under subsection (e) that entitles him to benefits in accordance with subsection (b). Because the statute requires a political subdivision, such as the City, to implement and facilitate a relocation assistance program, which it is undisputed that the City has not done for individuals whose property is demolished

pursuant to BSB orders or court ordered abatement actions, Montellano concludes that appellees' inaction, as City officials, is ultra vires for which he can bring his claim.[2] Appellees counter that subsection (e)'s contextual location within the Property Code means that the statutory obligation is reserved for the City's use of eminent domain power, such as condemnation proceedings or other actions in which the City would acquire the property.

In essence, both parties argue that the statute is unambiguous in their favor, or, in the alternative, if we find the statute to be ambiguous, that legislative history and external construction aids shift the balance in their favor. For the reasons below, we find section 21.046 to be unambiguous and direct—the acquisition of property, meaning, in general, to gain possession or obtain the right to use the property within the context of a government entity's eminent domain authority, is a requirement for benefits under subsection (b) and, thus, necessary to impose a duty on government officials to implement a program rules under subsection (c). Our disposition turns on the meaning of "acquisition" in section 21.046.

### C. *"Acquisition" Under Texas Property Code Section 21.046*

Neither the statute nor its federal counterpart provides a definitive definition of "Acquisition." "In such circumstances, we typically look first to dictionary definitions to determine a term's common, ordinary meaning." *Am. Pearl Group, L.L.C. v. Nat'l Payment Sys., L.L.C.*, 715 S.W.3d 383, 387 (Tex. 2025) (internal quotation marks omitted). One dictionary defines "acquire" as "to gain possession or control of." *Acquire*, BLACK'S LAW DICTIONARY (12th ed. 2024). Another dictionary defines the term as "to get as one's own." *Acquire*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/acquire (last visited October 17,

---

[2] Montellano additionally argues that the subsection (e) applies because the City's use of BSB orders qualifies as a demolition program. However, regardless of how Montellano prosecutes his claim, our disposition remains the same. *See* TEX. R. APP. P. 47.1.

2025). Thus, the common or "ordinary" meaning shared by these definitions is that to "acquire" something, the acquiring party must, at a minimum, gain possession or obtain the right to use the thing sought to be acquired.

Recently, the Eighth Court of Appeals examined the meaning of "acquisition" in section 21.046. *See generally Alamo Heights Indep. Sch. Dist. v. Jones*, 705 S.W.3d 317 (Tex. App.—El Paso 2024, no pet.). In *Jones*, AHISD, a school district, purchased land that had apartments on it through a third-party intermediary. *Id.* at 323. AHISD informed the apartment residents that they would need to move because the property would be repurposed. *Id*. The residents sued, arguing that under section 21.046, AHISD acted ultra vires in failing to implement a program to provide relocation assistance to the residents. *Id*. at 323–24. The residents reasoned that because AHISD "acquired" the property, they were entitled to benefits under subsection (b). *Id*. at 323. The Eighth Court conducted a detailed and complex statutory construction analysis. *Id.* at 329–43. Ultimately, the Eighth Court, focusing on the meaning of "acquired" in section 21.046, held that the context and the section's placement in the Property Code restrict section 21.046's application to condemnation cases.

> The most important contextual clue for the meaning of "acquiring" in § 21.046 is its placement within a series of sections that comprehensively deal with eminent domain. The first three sections in Chapter 21, grouped under Subchapter A (Jurisdiction), grant jurisdiction to courts in eminent domain cases. The next 20 sections, grouped in Subchapter B (Procedure), define the procedures for how a governmental entity exercises its eminent domain authority. Those procedures include initial disclosures to a landowner . . . providing a bill of rights . . . making a bona fide offer . . . filing of a condemnation petition . . . the appointment and findings of special commissioners . . . and the appeal from the commissioner's decision[.]
>
> . . . .
>
> Section [21.046 is] contained in Subchapter C (Damages and Costs). It contains ten sections, eight of which expressly relate to payments owed in property condemnation cases. . . . . The next five sections in Chapter 21, under Subchapter

D (Judgment), address the judgment in a condemnation case, the writ of possession, and any appeal. The final five sections outline the process of repurchase of property from a condemning entity. . . . We acknowledge the Government Code's admonition that "[t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute.["] Yet those headings can inform of the Legislature's intent. . . . But even without the headings, we would still find 43 sequentially numbered sections that outline the procedures for initiating, conducting, and concluding condemnation proceedings. To assume that § 21.046 was just randomly placed in this sequence of statutes and is not tied to condemnation defies reason.

. . . .

 . . . [The Residents] point us to added § 21.046(e) which addresses "code enforcement, rehabilitation, and demolition program." TEX. PROP. CODE ANN. § 21.046(e). Because none of those situations necessarily encompass condemnation, [the Residents] reason that the other subsections of § 21.046 apply outside the condemnation process. This subsection was added in 1973. The Bill Analysis acknowledged that "Under present law relocation expenses may be paid only where condemnation proceedings have been initiated."

. . . .

In summary, we might agree that the Legislature adopted the predecessor to § 21.046 to dovetail with federal relocation requirements, allowing Texas to participate in federal funding. The relocation services and payments were discretionary, allowing a governmental entity to comply when it needed to under federal law, or when it desired to for its own reasons. The terms of § 21.046 only became mandatory in 2011, and nothing informs us that at that time the Legislature intended to adopt the comprehensive obligations that the federal government imposes on itself. Instead, the mandatory obligations in Texas fall within the much narrower scope of eminent domain.

*Id.* at 335–40 (citations omitted); *see also Burris v. Metro. Transit Auth. of Harris Cnty.*, 266 S.W.3d 16, 19 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("A governmental unit exercises its power of eminent domain through the process referred to as condemnation. Condemnation is the procedure by which the sovereign exercises its right to take property of a private owner for public use, without consent, upon the payment of just compensation.") (citation omitted). Even though our sister court looked to the legislative history of section 21.046 in its analysis, and we do not, we nevertheless reach the same result "that the context of § 21.046 limits its application" to the eminent domain environment—i.e., cases in which a government entity will gain possession or

obtain the right to use of the property in question. *See Jones*, 705 S.W.3d at 338; *see also Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135–36 (Tex. 2018) (noting that reference to legislative history or external aids is reserved for when a statute is determined to be ambiguous despite the legislative grant of power to the contrary); *but see* TEX. GOV'T CODE § 311.023(3).

Reviewing section 21.046 in its entirety and in the context in which it occurs, acquiring—meaning possessing or obtaining the right to use of the property—is a necessary triggering event for a duty to be imposed on a governmental entity to develop a relocation assistance program and implement rules focused on the parties to be affected by the acquisition as provided by the statute. *See Jones*, 705 S.W.3d at 335–40; *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 326 (Tex. 2017); *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015); *see also Devines v. Maier*, 665 F.2d 138, 148 (7th Cir. 1981) ("[T]he phrases 'acquisition of real property,' used in [section] 4601(6), and 'right to use property,' used by the Supreme Court in defining 'acquisition,' each carry the connotation of vesting affirmative property rights."); *cf. Alexander v. U. S. Dep't of Hous. & Urban Dev.*, 441 U.S. 39, 63 n.41 (1979) (noting, in reviewing the federal relocation assistance program statute, "Section 101(6) does not, however, require that an agency anticipate obtaining title to the property. The legislative history demonstrates that Congress focused on the eventual right to use property, not on an agency's mode of procurement.").

Here, it is undisputed that the City has adopted and implemented rules in compliance with section 21.046 in cases in which it exercises its eminent domain authority. It is also undisputed that the circumstances giving rise to the facts of this case were not spawned from the City's use of its eminent domain powers. Rather, Montellano's lawsuit is based on the City's initiation of public

nuisance abatement proceedings, a detailed process established in the Local Government Code. *See generally* TEX. LOC. GOV'T CODE §§ 214.001–.005. And critically, the City is not seeking to acquire possession or obtain the right to use the property, which remains with the owners— Montellano and his other co-owners. *See id.* at § 214.002; *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012) (explaining that because "'all property is held subject to the valid exercise of the police power,'" the Supreme Court of Texas has "long held that the government commits no taking when it abates what is, in fact, a public nuisance").

Furthermore, it is unlikely and illogical for the legislature to have intended for the benefits described in subsection (b) and the relocation assistance program mandated in the statute to apply to every fathomable situation in which a person must move personal property or from their home as a direct result of code enforcement or an enumerated program. *See United States v. Am. Trucking Assns., Inc.*, 310 U.S. 534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."); *see, e.g.*, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 444 (Tex. 2009); *Saade v. Villarreal*, 280 S.W.3d 511, 519 (Tex. App.—Houston [14th Dist.] 2009, pet. dism'd). We additionally recognize that under the Local Government Code, a municipality may generally recover the expense of removing a public nuisance and assess civil penalties. *See generally* TEX. LOC. GOV'T CODE § 214.0015; SAN ANTONIO, TEX. CODE art. VIII § 6-165 (2025); *Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). As we strive to read statutes cohesively, it is untenable to interpret the Local Government Code as allowing a municipality to recover the expenses of abating public nuisance and impose civil penalties, while the Property Code would require the municipality to create a program mandating relocation

expenses.[3] *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) ("Looking to the statutory scheme, we strive to give the provision a meaning that is in harmony with other related statutes."); *Combs*, 340 S.W.3d at 439.

In sum, we hold that subsection (e) only applies in the situations in which the governmental entity "acquires" the property, such as through eminent domain or other proceedings in which possession or the right to use the property will pass to the government entity within the context of the entity's eminent domain authority. Here, because the City will not gain possession or obtain the right to use the property, and because it is undisputed that the City is not exercising its eminent domain authority, appellees do not have a statutory duty to implement a relocation assistance program under section 21.046 as alleged by Montellano. Accordingly, appellees have not acted ultra vires in failing to implement a program that they have no legal duty to implement.

### D. *Montellano's Due Course of Law*

Finally, Montellano argues that, because he has a right to relocation assistance under subsection (e) based on the language of section 21.046, and because appellees failed "to provide any procedures to claim assistance or challenge the deprivation of assistance," his right to the due course of law in the Texas Constitution has been violated. "The Texas Constitution's due-course-of-law guarantee provides that '[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.'" *Mosley v. Tex. Health & Human Services Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019) (quoting TEX. CONST. art. I, § 19) (alteration in original). To be protected by the state constitution's

---

[3] We acknowledge that our sister court, when examining the legislative history of subsection (e), generally stated that "[e]ach of the § 21.046(e) situations involve a common thread—a government's coercive power to regulate the use of private property. They serve as a stand in for condemnation, and are a logical addition to § 21.046. Thus[,] they do not inform our view of AHISD's duties in acquiring this Property." *See Jones*, 705 S.W.3d at 340. We interpret our sister court's point, within its broader analysis, to mean that the acquisition of the property—or a "stand in" for a condemnation case—is necessary for the statute to apply. The question of what constitutes, does not, and could be a condemnation case is not before this court.

due-course clause, however, the protected interest must be vested. *See Tex. Dep't of State Health Sers. v. Crown Distrib. LLC*, 647 S.W.3d 648, 655 (Tex. 2022); *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018) ("To have a constitutionally protected . . . interest, a person must have a legitimate claim of entitlement rather than a mere unilateral expectation.") (internal quotation marks omitted). Here, because we hold that appellees do not have a duty to implement a relocation assistance program under these facts, Montellano has not shown that he has a vested, constitutionally protected interest. *See Crown Distrib. LLC*, 647 S.W.3d at 655; *Honors Acad., Inc.*, 555 S.W.3d at 61. Accordingly, because Montellano has not been deprived of a vested interest protected by the due course clause, his right to due course of law has not been violated.

## CONCLUSION

Because an ultra vires claim against City officials will only lie where a legal duty exists, and none does here, the trial court did not err in granting appellees' plea to the jurisdiction. We affirm the judgment of the trial court.

Lori I. Valenzuela, Justice