

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00421-CV

Pedro **MARTINEZ**, Superintendent of San Antonio Independent School District;
Patti Radle, President of Board of Trustees for San Antonio Independent School District; Arthur
V. Valdez, Vice-President of Board of Trustees for San Antonio Independent School District;
Debra Guerrero, Secretary of Board of Trustees for San Antonio Independent School District;
Steven Lecholop, Trustee of Board of Trustees for San Antonio Independent School District;
James Howard, Trustee of Board of Trustees for San Antonio Independent School District;
Ed Garza, Trustee of Board of Trustees for San Antonio Independent School District; and
Democracy Prep Public Schools, Inc.
Appellants

v.

## SAN ANTONIO ALLIANCE OF TEACHERS AND SUPPORT PERSONNEL,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-08318
Honorable Karen H. Pozza, Judge Presiding

Opinion by: Beth Watkins, Justice

Sitting: Luz Elena D. Chapa, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: April 10, 2019

REVERSED AND RENDERED

Appellee San Antonio Alliance of Teachers and Support Personnel (the "Alliance") filed

the underlying lawsuit alleging a contract entered into between the San Antonio Independent

School District ("SAISD") and Democracy Prep Public Schools, Inc. ("Democracy Prep")

pursuant to section 11.174 of the Texas Education Code is void.[1] The appellants are Democracy Prep and the superintendent and all of the members of the board of trustees of SAISD, who were sued in their official capacities. In their briefs, the appellants present four alternative bases for holding the trial court erred in denying their pleas: (1) SAISD's superintendent and trustees did not engage in the ultra vires act alleged by the Alliance in approving and signing the contract; (2) the Alliance failed to exhaust its administrative remedies; (3) the Alliance lacks associational standing; and (4) the Alliance's claims are moot. Because we hold SAISD's superintendent and trustees did not engage in the alleged ultra vires act, we reverse the trial court's order and render judgment dismissing the underlying lawsuit. We do not address the appellants' alternative arguments. *See* TEX. R. APP. P. 47.1.

## BACKGROUND

P.F. Stewart Elementary School is a public school campus within SAISD. Because the campus received a rating of Improvement Required for four consecutive years, SAISD was notified the Commissioner of Education ("Commissioner") intended to impose sanctions on SAISD after the end of the 2017-2018 school year unless some action was taken to improve the rating. In response, pursuant to section 11.174 of the Code, SAISD entered into a contract with Democracy Prep to operate the campus. Under the terms of the contract, Democracy Prep was to begin operating the campus on July 1, 2018.

On May 4, 2018, the Alliance filed the underlying lawsuit seeking declaratory and injunctive relief. The Alliance alleged the contract was void because SAISD failed to consult with campus personnel regarding the provisions to be included in the contract before the contract was entered into as required by section 11.174(c) of the Code.

---

[1] In its second amended petition, the Alliance noted it was not seeking relief from Democracy Prep but included it as a party "because it may claim an interest relating to the subject of this action," presumably an interest in the contract.

On May 24, 2018, SAISD's superintendent and trustees filed a first amended plea to the jurisdiction and brief in support, asserting the trial court did not have jurisdiction to consider the Alliance's claims. The Alliance filed a response to the plea on May 31, 2018. That same day, Democracy Prep also filed a plea to the jurisdiction.

On June 1, 2018, the trial court held a hearing on the pleas and the Alliance's request for a temporary injunction. On June 4, 2018, the trial court signed an order denying the pleas and the request for temporary injunction. The appellants timely appealed the provisions in the trial court's order denying their pleas.

## STANDARD OF REVIEW AND ULTRA VIRES ACTS

"Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo." *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018). The resolution of the jurisdictional inquiry in this case involves statutory construction, which we also review de novo. *Levinson Alcoser Assocs., L.P. v. El Pistolón II, Ltd.*, 513 S.W.3d 487, 493 (Tex. 2017). Our primary objective in statutory construction is to give effect to the Legislature's intent. *Id*. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). Because we presume the Legislature chose the language in a statute deliberately and purposefully, we "endeavor to interpret each word, phrase, and clause in a manner that gives meaning to them all." *Levinson Alcoser Assocs., L.P.*, 513 S.W.3d at 493. "We accordingly read statutes as a whole so as to render no part inconsistent, superfluous, or devoid of meaning." *Id*.

## IMMUNITY AND ULTRA VIRES ACTS

"Although governmental entities and officers are generally immune from liability absent the government's waiver or consent, such immunity does not prohibit suit against a state official

if the official's actions are ultra vires." *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). "To state an ultra vires claim, the plaintiff must allege and prove that the named officials acted without legal authority or failed to perform a ministerial act." *Id*. "'Ministerial acts' are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *City of Hous. v. Hous. Mun. Employees Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (internal quotation omitted).

## SECTION 11.174

The Alliance contends SAISD's superintendent and trustees engaged in an ultra vires act by approving the contract with Democracy Prep because section 11.174(c) of the Code required SAISD to consult with campus personnel regarding the provisions to be included in the contract before entering into the contract. SAISD's superintendent and trustees respond section 11.174(c) only requires such consultation if the contract is between a school district and an open-enrollment charter school, and it is undisputed that Democracy Prep is not an open-enrollment charter school. In resolving this dispute, we are bound by the plain language of the governing statutes.

The Texas Education Code provides for the following three classes of charters under Chapter 12 of the Code: (1) a home-rule school district charter as provided by Subchapter B; (2) a campus or campus program charter as provided by Subchapter C; and (3) an open-enrollment charter school as provided by Subchapter D. TEX. EDUC. CODE ANN. § 12.002. Under section 11.174 of the Code, a school district campus that receives an overall performance rating of unacceptable can qualify for an exemption from the sanctions the Commissioner could otherwise impose if the board of trustees of the district contracts to partner to operate the district campus with: (1) "the governing body of an open-enrollment charter school;" or (2) "on approval of the Commissioner, an entity granted a charter by the district under Subchapter C, Chapter 12, that is

eligible to be awarded a charter under Section 12.101(a)." *Id.* § 11.174(a), (f). Section 11.174(c) provides:

> Before entering into a contract as provided by this section, a school district must consult with campus personnel regarding the provisions to be included in the contract between the school district and ***the open-enrollment charter school***. All rights and protections afforded by current employment contracts or agreements may not be affected by the contract entered into between the school district and ***an open-enrollment charter school*** under this section.

*Id.* § 11.174(c) (emphasis added). Given that section 11.174(a) permits contracts under section 11.174 to be entered into with entities having two different classes of charters, and section 11.174(c) refers to only one of those classes, the clear text of the statute supports the position of SAISD's superintendent and trustees that the legislature intended to require consultation under section 11.174(c) only if the contract is between a school district and an open-enrollment charter school. *Entergy Gulf States, Inc.*, 282 S.W.3d at 437 ("Where text is clear, text is determinative of [legislative] intent.").

This position is further bolstered when section 11.174 is read as a whole. *Levinson Alcoser Assocs., L.P.*, 513 S.W.3d at 493 ("we read statutes as a whole so as to render no part inconsistent, superfluous, or devoid of meaning"). Subsections (k), (l), and (m) further differentiate between contracts under Subsection (a)(1) with the governing body of an open-enrollment charter school and contracts under Subsection (a)(2) with an entity granted a charter under Subchapter C as follows:

> (k) A district proposing to enter into a contract ***under Subsection (a)(2)*** shall notify the commissioner of the district's intent to enter into the contract. The commissioner by rule shall establish the procedures for a district to notify the commissioner under this subsection, including the period within which the notification is required before the school year in which the proposed contract would take effect, and for a district and, if necessary, an entity to submit information as required by the commissioner. The commissioner shall notify the district whether the proposed contract is approved not later than the 60th day after the date the commissioner receives notice of the proposed contract and all information required by the commissioner to be submitted. If the commissioner fails to notify the district

that the proposed contract has been approved or denied within the period prescribed by this subsection, the proposed contract is considered approved.

(l) Except as expressly provided by this section, the commissioner may not impose additional requirements on an ***open-enrollment charter school*** to be eligible for a contract under Subsection (a).

(m) The commissioner shall adopt rules as necessary to administer this section, including requirements for an entity and the contract with the entity, including the standards required for an entity to receive approval ***under Subsection (a)(2)***.

TEX. EDUC. CODE ANN. § 11.174(k)-(l) (emphasis added).

Despite the clear text of section 11.174 differentiating between contracts under Subsection (a)(1) and contracts under Subsection (a)(2), the Alliance argues in its brief that section 12.0522(d) of the Code equates an entity granted a charter under Subchapter C with an entity granted a charter under Subchapter D. Section 12.0522(d) provides that Subchapter D, which governs open-enrollment charter schools, applies to a campus granted a charter under Subchapter C "as though the campus were granted a charter under Subchapter D, and the campus is considered an open-enrollment charter school." *Id*. § 12.0522(d). The Alliance's argument ignores that section 12.0522(d) refers to a "campus" being considered an open-enrollment charter school and does not equate the "governing body of an open-enrollment charter school" with an entity granted a Subchapter C charter which is the differentiation made in Subsections (a)(1) and (a)(2) of Section 11.174. Furthermore, even if section 12.0522(d) is read to create an ambiguity in the distinction drawn between the classes of charters referenced in section 11.174(a), section 12.0522(d) only provides that Subchapter D applies to a campus granted a charter under Subchapter C, it does not refer to section 11.174 which contains specific provisions governing contracts regarding the operation of district campuses receiving unacceptable performance ratings. *See* TEX. GOV'T CODE ANN. § 311.026 (providing specific provision prevails over general in the event of a conflict); *State*

*ex rel. Best v. Harper*, 562 S.W.3d 1, 10 (Tex. 2018) (noting rule that specific prevails over general applies only when the statutes at issue are ambiguous).

The Alliance next argues the rules promulgated by the Commissioner do not differentiate between the governing body of an open enrollment charter school and an entity granted a charter under Subchapter C because the rules define "operating partner" to include both and require contacts with an operating partner to include an assurance that the district has consulted with campus personnel as required by section 11.174(c) of the Code. *See* 19 TEX. ADMIN. CODE § 97.1075(b)(1), (d)(10). We disagree. Just like section 11.174, the rules promulgated by the Commissioner also differentiate between contracts under Subsection (a)(1) with the governing body of an open-enrollment charter school and contracts under Subsection (a)(2) with an entity granted a charter under Subchapter C. Specifically, section 97.1079 of the rules, which was promulgated in furtherance of section 11.174(k), provides, "This section applies only to independent school districts that intend to contract to partner to operate a campus and receive benefits under Texas Education Code (TEC) § 11.174(a)(2)." 19 TEX. ADMIN. CODE § 97.1079(a). Furthermore, section 97.1079(d)(1) of the rules requires the Commissioner to approve an eligibility approval request form in furtherance of section 11.174(a)(2)'s requirement that a contract between a school district and an entity granted a charter under Subchapter C must be approved by the Commissioner. *See* TEX. EDUC. CODE ANN. § 11.174(a)(2) (providing for contract to operate the district campus with "on approval by the commissioner, an entity granted a charter by the district under Subchapter C, Chapter 12, that is eligible to be awarded a charter under Section 12.101(a)"); 19 TEX. ADMIN. CODE § 97.1079(d)(1). Finally, section 97.1079(d)(2) of the rules requires the Texas Education Agency to review eligibility approval requests submitted by applicants. 19 TEX. ADMIN. CODE § 97.1079(d)(2). With regard to the eligibility approval request submitted for the contract between SAISD and Democracy Prep, the performance contract

evaluation form completed by TEA[2] noted the contract met the requirements of section 11.174(c), explaining:

> To qualify for benefits under TEC §11.174, subsection (c) of that statute requires the district to consult with campus personnel regarding provisions to be included in a contract between the district and an **open-enrollment charter school**. This same subsection requires that the contract between a school district and an **open-enrollment charter school** not affect the rights and protections afforded by current employment contracts or agreements. TAC §97.1075(d)(10) requires an assurance that the district has consulted with campus personnel regarding the provisions included in the performance contract and that the rights and protections afforded by current employment contracts or agreements shall not be affected by this contract **as required by TEC §11.174(c)**. Open-enrollment charter schools are authorized by TEC Chapter 12, Subchapter D "Open Enrollment Charter Schools." Because this contract is between a school district and [an] entity granted a charter under TEC Chapter 12, Subchapter C "Campus or Campus Program Charter," and not with an entity granted a charter under TEC Chapter 12, Subchapter D "Open Enrollment Charter Schools," the requirements in TEC §11.174(c) and 19 TAC §97.1075(d)(1) do not apply to this application.

Finally, the Alliance contends legislative history supports applying section 11.174(c) to all eligible entities and cites revisions in the language of the senate bill as it made its way through the legislative session and comments by three representatives. Legislative history, however, "cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety." *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). Furthermore, "[s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the

---

[2] We note TEA sent a letter to SAISD's superintendent making the approval of the proposed contract with Democracy Prep contingent on several modifications to the contract. Perhaps the Legislature imposed the consultation requirement under section 11.174(c) only on open-enrollment charter schools because section 11.174(a)(2) requires the Commissioner to approve contracts with entities granted a charter under Subchapter C. The Commissioner's approval under section 97.1079 of the rules is not required for contracts with open-enrollment charter schools. *See* TEX. EDUC. CODE ANN. § 11.174(l) ("Except as expressly provided by this section, the commissioner may not impose additional requirements on an open-enrollment charter school to be eligible for a contract under Subsection (a)."); 19 TEX. ADMIN. CODE § 97.1079(a) ("This section applies only to independent school districts that intend to contract to partner to operate a campus and receive benefits under Texas Education Code (TEC) § 11.174(a)(2)."). Since this is a just and reasonable result, the Legislature requires us to credit an interpretation that supports it. *See* TEX. GOV'T CODE ANN. § 311.021(3).

majorities of both legislative chambers that enacted a statute." *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011). In this case, section 11.174, when read in its entirety, clearly differentiates between a Subsection (a)(1) contract with the governing body of an open-enrollment charter school and a Subsection (a)(2) contract with an entity granted a charter under Subchapter C. We are not at liberty to disregard a distinction the Legislature enacted. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

## CONCLUSION

Because the plain text of section 11.174 establishes that the consultation requirement in section 11.174(c) applies only to an open-enrollment charter school and Democracy Prep is not an open-enrollment charter school, SAISD's superintendent and trustees were not required to consult with campus personnel before entering into the contract with Democracy Prep. Accordingly, the Alliance has failed to allege an ultra vires claim. Therefore, the trial court erred in denying the appellants' pleas to the jurisdiction. The provisions of the trial court's order denying the pleas are reversed, and judgment is rendered dismissing the underlying lawsuit.

Beth Watkins, Justice