**Opinion issued May 7, 2020**



In The

# Court of Appeals

### For The

## First District of Texas

———————————

### NO. 01-17-00626-CV

———————————

**HELWIG VAN DER GRINTEN, JAMES W. DALTON, AND ANIS HUSSAIN, Appellants**

**V.**

**CITY OF SUGARLAND, JOE R. ZIMMERMAN, DOUGLAS BRINKLEY, AND ALLEN BOGARD, Appellees**

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 17-DCV-238872**

---

### MEMORANDUM OPINION

Helwig Van Der Grinten, James W. Dalton, and Anis Hussain, individually and as putative class representatives on behalf of all others similarly situated, sued the City of Sugar Land and three city officials challenging the City's red-light

camera ordinance. The trial court granted a plea to the jurisdiction and dismissed the appellants' claims. On appeal, the parties asked this court to abate the appeal pending the resolution of *Garcia v. City of Willis*, 593 S.W.3d 201 (Tex. 2019), which was then pending on appeal in the Supreme Court of Texas. After the Supreme Court issued an opinion, we reinstated the appeal and permitted the parties to file supplemental briefs.

As in *Garcia*, "[u]nderlying this case is a constitutional challenge to red-light cameras as a traffic-enforcement tool." *Id.* at 204. For the same reasons explained in *Garcia*, the trial court properly granted the plea to the jurisdiction as to all claims and defendants except Van Der Grinten's reimbursement and takings claims against the City of Sugar Land.

Van Der Grinten did not plead that he paid the penalty for the red-light camera violation that is the basis for his suit, nor did he attest that he paid the penalty in the declaration he provided to rebut the City's jurisdictional evidence. At oral argument, his counsel conceded that he did not pay the penalty. We conclude that Van Der Grinten lacked standing to assert reimbursement and takings claims and that the trial court also lacked subject-matter jurisdiction over the alleged takings claim because it was not properly pleaded. We affirm the trial court's judgment dismissing the case for want of jurisdiction.

**Statutory History**

In 2002, then-Attorney General John Cornyn "issued an opinion on red-light cameras (RLCs), determining that cities could use them but could not impose a civil penalty for red-light running because it would conflict with state law requiring the violation to be punished with a criminal penalty."[1] The following year, the Legislature enacted section 543.202 of the Transportation Code, which allowed "local authorities to regulate roads in their jurisdictions in accordance with state law or municipal ordinance through criminal, civil, and administrative enforcement against a person, including the owner or operator of a motor vehicle."[2] Three years later, then-Attorney General Greg Abbott issued an opinion stating that the use of red-light cameras on state roads was permissible.[3] Municipalities began installing red-light camera systems based on section 543.202 and the attorney general's opinion.[4]

In 2007, the year after then-Attorney General Abbott's opinion was issued, the Texas Legislature enacted former chapter 707 of the Transportation Code, which regulated photographic traffic signal enforcement systems, i.e., red-light camera

---

[1]     Texas Bill Analysis, S.B. 1119, May 15, 2007.

[2]     *Id.*

[3]     *Id.*

[4]     *Id.*

systems, used to impose civil fines on owners of vehicles that were photographed driving through red lights at designated intersections.[5] Among other things, chapter 707 directed local authorities to "conduct a traffic engineering study of the approach to determine whether, in addition to or as an alternative to the system, a design change to the approach or a change in the signalization of the intersection [was] likely to reduce the number of red light violations at the intersection."[6] The results of such studies were to be presented to a citizens advisory committee that would advise the local authority on the installation and operation of a red-light camera enforcement system.[7] However, the requirement to conduct a traffic engineering study and to present the results to a citizens advisory committee was not retroactive:

---

[5] *See* Act of May 27, 2007, 80th Leg., R.S., Ch. 1149, §§ 1, 10, 2007 Tex. Gen. Laws 3924, 3931; *see also* Act of May 17, 2019, 86th Leg., R.S., Ch. 372, H.B. 1631, §§ 2, 6 (repealing prior provisions and prohibiting the use of photographic traffic signal enforcement systems); (former) TEX. TRANSP. CODE § 707.002 ("The governing body of a local authority by ordinance may implement a photographic traffic signal enforcement system and provide that the owner of a motor vehicle is liable to the local authority for a civil penalty if, while facing only a steady red signal displayed by an electrically operated traffic-control signal located in the local authority, the vehicle is operated in violation of the instructions of that traffic-control signal, as specified by section 544.007(d)."). The Transportation Code provisions regarding the use of red-light camera systems were in effect from September 1, 2007 to June 1, 2019.

[6] (Former) TEX. TRANSP. CODE § 707.003.

[7] *Id.*

this requirement applied "only to a contract entered into on or after the effective date" of the Act.[8]

A person who "receive[d] a notice of violation" was permitted to "contest the imposition of the civil penalty specified in the notice of violation by filing a written request for an administrative adjudication hearing," "on or before the date specified in the notice of violation."[9] The administrative hearing would culminate with entry of a written finding of "liability" or "no liability" by the administrative hearing officer.[10] A finding of liability would "specify the amount of the civil penalty for which the person is liable."[11] A vehicle owner could appeal an adverse finding from the administrative hearing officer to the municipal court for a trial de novo.[12] "[F]ailure to pay the civil penalty or to contest liability for the penalty in a timely manner" was "an admission of liability and a waiver of the [vehicle] owner's right to appeal the imposition of the civil penalty."[13]

---

[8]     2007 Tex. Sess. Law Serv. Ch. 1149 (S.B. 1119), § 9.

[9]     *See* (former) TEX. TRANSP. CODE § 707.014.

[10]    *Id.*

[11]    *Id.*

[12]    *See* Act of May 27, 2007, 80th Leg., R.S., Ch. 1149, § 3, 2007 Tex. Gen. Laws 3924, 3930 ("A municipal court, including a municipal court of record, shall have exclusive appellate jurisdiction within the municipality's territorial limits in a case arising under chapter 707, Transportation Code.").

[13]    *See* (former) TEX. TRANSP. CODE § 707.011.

# Background

## I. The City adopted an ordinance and established a red-light camera enforcement system.

In July 2007, about two months before the effective date of former chapter 707, the City of Sugar Land adopted Ordinance No. 1628, which authorized the City's red-light camera enforcement system. The ordinance provided that the owner of a motor vehicle was "liable to the City for a civil penalty of $75 if, while facing only a steady red signal displayed by an electrically operated traffic-control signal located in the City, the vehicle is operated in violation of the instructions of that traffic-control signal . . . ." The ordinance permitted the owner to contest the civil penalty by requesting a hearing before an administrative adjudication hearing officer appointed by the city council. In addition, the City's ordinance allowed a vehicle owner to "transfer liability for the violation" by providing "the Police Department with the name, address, and contact information of the actual driver of the motor vehicle at the time of the violation" before the hearing "by submitting a sworn affidavit" or "by testimony under oath at the hearing." The ordinance itself did not mention any right of appeal.

Later that same month, the City contracted with American Traffic Solutions for the installation and administration of a red-light camera enforcement system. The contract provided for its termination if the Legislature banned the use of red-light cameras for enforcement in the future.

## II. Appellants received notices of violation.

Each of the appellants received a notice of violation from the City of Sugar Land. Dalton received a notice of violation assessing a penalty of $75 and indicating that the payment was due in November 2015. He did not contest the assessment in an administrative adjudication hearing or appeal to the municipal court. He received a delinquent notice of violation, which informed him that a late fee of $25 had been assessed in addition to the original $75 assessment. He also received two letters from the law firm of Linebarger Goggan Blair & Sampson, LLP notifying him of his unpaid civil penalty and demanding payment. In January 2017, Dalton paid the $100 assessment and sent to the City of Sugar Land Photo Enforcement Program a letter in which he asserted that he was paying the penalty "under duress."[14]

---

[14]    Dalton's letter stated:

> The payment is being made under duress, and is not being paid voluntarily. This is because 1) I am not admitting liability by failing to pay and intend to seek reimbursement within my two year statute of limitations, 2) I cannot afford to have the registration on my vehicle withheld, which is what Transportation Code section 707.017 allows if the ticket is not paid, and which you have threatened. Further, I am being threatened by a law firm you have apparently hired and I cannot afford for you to take any further action which might damage my credit.

> BY MAKING THE AFOREMENTIONED PAYMENT, I DO NOT ADMIT LIABILITY FOR THE NOTICE OF VIOLATION . . . . There is no way that I can have sufficient time to challenge your lack of authority to assess this penalty or the unconstitutionality of the ticket in district court, and the necessary appeal or appeals that would be involved in same, before the City of Sugar Land could stop the

Hussain alleged that around January 2016, he received a notice of violation assessing a penalty of $75 and that he paid the penalty "under protest and under duress and as a result of the fraudulent conduct" of the appellees. He did not supply jurisdictional evidence, and no letter or notice of violation relating to Hussain's penalty is in the appellate record.

Van Der Grinten received a notice of violation in May 2016 assessing a penalty of $75. According to his affidavit, an administrative adjudication officer upheld the assessment. Van Der Grinten appealed the assessment, and in October

---

registration on my vehicle from being renewed. As it will take several years to fight this ticket in court factoring in the appeals that would be involved, I would effectively be without a vehicle during that time with the registration on my vehicle being withheld.

Further, there are serious questions as to whether or not the City of Sugar Land has complied with all conditions precedent to the installation of any red light camera enforcement system and this Notice is likely sent in violation of State law and the City is without jurisdiction to even attempt such assessment.

Thus, the payment for the penalty assessed under Notice of Violation No. . . . is not being made voluntarily. By negotiating check no. . . . which is submitted in person to the Sugar Land Municipal Court, the City of Sugar Land acknowledges, understands, and agrees that the payment is not being made voluntarily, but is instead being paid under duress, and further, without knowledge of all material facts, such as whether the City of Sugar Land conducted the traffic engineering study required by Transportation Code section 707.003(c). Further, by negotiating the check, the City of Sugar Land acknowledges, understands and agrees that by making this payment, I do not waive any claims of any kind and I may have to seek reimbursement for the unlawful penalty assessed to me by the City of Sugar Land . . . .

2016, the Sugar Land Municipal Court upheld the assessment. The notice of determination of appeal states a reason for the determination as "even if true, no defense," but nothing in the record indicates what Van Der Grinten contended in the appeal. Nothing in the record or the live pleading states that Van Der Grinten paid the penalty.

**III.    The appellants filed suit, individually and on behalf of a putative class, challenging former chapter 707 and the City ordinance and seeking reimbursement.**

Van Der Grinten, Dalton, and Hussain sued the City of Sugar Land, and three City officials: Mayor Joe R. Zimmerman, Police Chief Douglas Brinkley, and City Manager Allen Bogard. The appellants brought their claims in their individual capacity and as representatives of other people similarly situated. The record on appeal does not include a motion for class certification or an order certifying the class.

The appellants sought declaratory judgment, injunctive relief, and a reimbursement for penalties assessed by the City. They sought declaratory judgment that: (1) former chapter 707 and the City's red-light camera system ordinance were unconstitutional;[15] (2) the City had no jurisdiction to assess red-light camera

---

[15]    The appellants pleaded numerous reasons why the statute and ordinance are unconstitutional:

> 1.    Article V, section 19 of the Texas Constitution vests exclusive jurisdiction in the justice of the peace courts in civil matters where the amount in controversy is $200 or less but the statute

violation penalties because it failed to conduct engineering studies and present them to a citizens advisory committee; (3) the City officials made parties to the underlying suit acted ultra vires by failing to comply with the requirements for an engineering study and presentation to a citizens advisory committee; (4) all assessments for red-light camera violations are void; (5) appellants and those similarly situated to them do not owe any alleged assessments for red-light camera violations; and (6) all

---

and ordinance vest jurisdiction in an administrative adjudication hearing officer;

2. Article I, section 10 of the Texas Constitution gives an accused the right to a jury trial, the right against compelled self-incrimination, and the right to confront witnesses, but the statute and ordinance do not, even though running a red light is a crime (misdemeanor);

3. The statute and ordinance allegedly deprive a vehicle owner of rights under article I, section 10 and doing so violates article I, section 29, which prohibits infringing on the bill of rights;

4. Chapter 707 deprives an owner of due process by creating an irrebuttable presumption that the registered owner was driving at the time of the violation;

5. Chapter 707 violates the right to a jury trial guaranteed by article I, section 15 of the Texas Constitution;

6. The requirement to supersede the penalty before appealing to the municipal court violates the open courts provision in article I, section 13; and

7. Conferring appellate jurisdiction on the municipal court violated article V, sections 3 and 6, which confer appellate jurisdiction on the appellate courts and Supreme Court of Texas.

judgments for assessment of red-light camera violations are void and unenforceable. The appellants sought an injunction prohibiting the City from continuing to enforce the red-light camera ordinance, collecting alleged illegally assessed penalties, and requiring the City to remove any holds placed on the registration of any class member's vehicle. Finally, the appellants sought reimbursement of more than $1,000,000 (on behalf of the putative class) and attorney's fees. They alleged, as an alternative basis for recovering paid penalties, that they were entitled to reimbursement as a takings claim under article I, section 17 of the Texas Constitution because former chapter 707 and the City's ordinance were unconstitutional and therefore unlawful.

## IV.    The appellees filed a plea to the jurisdiction.

The appellees sought dismissal by filing a plea to the jurisdiction. They argued that former chapter 707 was enacted as a comprehensive and pervasive regulatory process that intended for exclusive jurisdiction to be in the administrative adjudication hearing officer with an appeal to the municipal court.[16] They argued that the enactment of the pervasive and regulatory scheme vested sole jurisdiction in the administrative hearing tribunal, and that article V, section 19 of the Texas

---

[16]    *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (under doctrine of exclusive jurisdiction, when Legislature enacts pervasive regulatory scheme to remedy problem to which legislation is addressed, administrative agency has "*sole* authority to make an initial determination in a dispute.").

Constitution, which vested exclusive jurisdiction in the justice of the peace courts for civil matters in which the amount in controversy did not exceed $200, was not violated because it did not apply. They also argued that: (1) the requirements for an engineering study and presentation of findings to a citizens advisory committee were inapplicable because the City entered into a contract with a red-light camera provider prior to the effective date of former chapter 707; (2) Dalton and Hussain had not paid the penalties under duress because they failed to exhaust administrative remedies and therefore they were not entitled to seek reimbursement; (3) the appellants' claims were barred by governmental and official immunity; and (4) their challenge to the statute and the ordinance was an impermissible collateral attack on proceedings that were in the exclusive jurisdiction of the municipal court. The City addressed the numerous alleged constitutional violations, and it argued that the individual defendants could not be personally liable because all the challenged actions were taken in the performance of their duties for the City.

The City attached the following evidence to its plea to the jurisdiction: (1) legislative history of the bill enacting former chapter 707; (2) Ordinance 1628; (3) the City's professional services agreement for installation and administration of the red-light camera enforcement system; (4) an affidavit from City of Sugar Land City Manager Allen Bogard; (5) an affidavit from City of Sugar Land Police Chief

Douglas Brinkley; and (6) an affidavit from City of Sugar Land Mayor Joe R. Zimmerman.

City Manager Bogard denied sending or causing the sending of any notice of a red-light camera violation, assessing any red-light camera penalty, implementing, making any material fact misrepresentation regarding any red-light camera, and making any representations about the jurisdiction of an administrative adjudication hearing officer or the municipal court regarding red-light camera violations. He also averred that he never failed to disclose the lack of engineering studies or presentation to a citizens advisory committee. Finally, he stated that he relied on counsel for legal interpretations and he had no knowledge that the City's failure to perform engineering studies or present them to a citizens advisory committee rendered a red-light camera penalty void.

Chief Brinkley averred that he "did not participate in the decision to enact Ordinance 1628 or the 2007 contract for red-light cameras." Like Bogard, Chief Brinkley denied sending or causing the sending of any notice of a red-light camera violation, assessing any red-light camera penalty, implementing, making any material fact misrepresentation regarding any red-light camera, and making any representations about the jurisdiction of an administrative adjudication hearing officer or the municipal court regarding red-light camera violations. He also stated that he relied on counsel for legal interpretations and he had no knowledge that the

City's failure to perform engineering studies or present them to a citizens advisory committee rendered a red-light camera penalty void.

Mayor Zimmerman averred that he "did not participate in the decision to enact Ordinance 1628 or the 2007 contract for red light cameras" and that he had "nothing to do with the implementation or enforcement of the red light camera system," although he had been "a vocal supporter of that system." He denied sending or causing the sending of any notice of a red-light camera violation, assessing any red-light camera penalty, implementing, making any material fact misrepresentation regarding any red-light camera, and making any representations about the jurisdiction of an administrative adjudication hearing officer or the municipal court regarding red-light camera violations. He also stated that he relied on counsel for legal interpretations and he had no knowledge that the City's failure to perform engineering studies or present them to a citizens advisory committee rendered a red-light camera penalty void.

In response, the appellants provided: (1) Van Der Grinten's sworn declaration regarding red-light camera penalty he was assessed, accompanied by the notice of violation and notice of determination of his appeal; (2) Dalton's sworn declaration regarding the red-light camera penalty he was assessed, accompanied by the notice of violation, delinquent notice of violation, notice of unpaid civil penalty, demand for payment of delinquent civil penalty, and the letter he wrote asserting that he was

paying the penalty under duress; and (3) the City's discovery responses in which it admitted that it had not conducted pre-installation engineering studies or appointed a citizens' advisory committee.

The trial court granted the plea to the jurisdiction. While this appeal was pending, the Legislature repealed the red-light camera enforcement provisions formerly codified in chapter 707 of the Transportation Code.

## Analysis

This is an appeal from the trial court's grant of the appellees' plea to the jurisdiction. The appellants' live pleading included claims for prospective relief (declaratory judgments and an injunction) and for retrospective relief (reimbursement or, alternatively, a takings claim under the Texas Constitution).[17] The appellants lack standing to raise claims for prospective relief. Dalton's and Hussain's reimbursement claims are barred by governmental immunity, and the court lacked subject-matter jurisdiction over their takings claims because they failed to exhaust statutory remedies that could have remedied the controversy. Finally, Van Der Grinten lacks standing to sue for reimbursement or a constitutional taking

---

[17] To the extent that any of the requested declarations sought a determination relating to past actions, those questions are part of the reimbursement and takings claims because a party may not "circumvent the State's sovereign immunity from suit by characterizing a suit for money damages" as a declaratory-judgment suit. *City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex. 2007).

because he did not pay the penalty. In addition, the trial court lacks subject-matter jurisdiction over his takings claims because he did not plead a valid takings claim.

## I.     Standards of review of a plea to the jurisdiction.

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction de novo. *Univ. of Texas M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). We "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

A plea to the jurisdiction may also challenge the existence of jurisdictional facts, and when it does, the parties may present evidence. *Id.* "In those situations, a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635. The movant must present summary-judgment proof demonstrating that the court lacks jurisdiction. *Id.* The burden then shifts to the nonmovant to show that there is a

material question of disputed fact on the jurisdictional issue. *Id.*; *see* TEX. R. CIV. P. 166a(c) (to prevail on traditional summary judgment motion, movant must establish that no genuine issues of material fact exists and that it is entitled to judgment as matter of law).

"Subject-matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "Subject matter jurisdiction requires that the party bringing the suit have standing, that there be a live controversy between the parties,[18] and that the case be justiciable." *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443). "If the district court lacks jurisdiction, in any of these senses, then its decision would not bind the parties." *Id.* A decision that does not bind the parties is a prohibited advisory opinion. *Id.*; *see Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) ("Under article II, section 1 of the Texas Constitution, courts have no jurisdiction to issue advisory opinions."); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 443

---

[18] "The mootness doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events." *Matthews, on behalf of M.M. v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016). Like the doctrine of standing, the mootness doctrine prevents the rendition of advisory opinions. *See Tesco Corp. (US) v. Steadfast Ins. Co.*, No. 01-13-00091-CV, 2015 WL 456466, at *2 (Tex. App.— Houston [1st Dist.] Feb. 3, 2015, pet. denied) (mem. op.) (quoting *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 130–31 (Tex. App.—Austin 2007, no pet.)) (court has no jurisdiction to rule on hypothetical or contingent situations, or to decide questions not essential to resolution of actual controversy).

(Tex. 1998) ("The courts of this state are not empowered to give advisory opinions."); *see also* TEX. CONST. art. II, § 1 (separation of powers).

## II. The appellants lack standing to raise claims for prospective relief.

The appellants seek prospective relief against the City in three forms: (1) declaratory relief that certain statutes and the City's ordinance are unconstitutional; (2) declaratory relief that city officials acted ultra vires in implementing and enforcing the ordinance, *see City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) ("[U]ltra vires claimants are only entitled to prospective relief."); and (3) injunctive relief prohibiting future enforcement of certain statutes and the City's ordinance. The appellants lack standing to raise these claims because their pleadings concern only prior assessments for red-light camera violations and because former chapter 707 has been repealed and replaced by a statute prohibiting red-light camera enforcement systems.

Standing "focuses on the question of who may bring an action." *Patterson*, 971 S.W.2d at 442. "The standing doctrine prohibits suits by those who are not personally aggrieved." *Perez v. Turner*, —S.W.3d—, No. 01-16-00985, 2019 WL 5243107, at \*4 (Tex. App.—Hous. [1st Dist.] Oct. 17, 2019, no pet.) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008)). "Standing consists of some interest peculiar to the person individually and not just as a member of the public." *Garcia*, 593 S.W.3d at 206 (citing *Hunt v. Bass*, 664 S.W.2d 323, 324

(Tex. 1984)). For a person to have standing, he must have suffered an injury that can be resolved by judicial action. *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580–81 (Tex. 2013); *see* TEX. CONST. art. I, § 13 (Open Courts provision; contemplates access to courts for people who have suffered "an injury"). Courts are "duty-bound" to determine whether standing exists, without regard to whether standing is urged by the parties or raised in the court below. *Garcia*, 593 S.W.3d at 206. "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman*, 369 S.W.3d at 150.

In *Garcia v. City of Willis*, 593 S.W.3d 201, 204 (Tex. 2019), the plaintiff, representing a putative class of citizens, challenged the constitutionality of red-light cameras as traffic-enforcement tools and "asked a district court to strike down both the state statutes authorizing use of red-light cameras and the City of Willis' ordinance providing for the use of red-light cameras within its jurisdiction." *Id.* Garcia's claims mirror those made by the appellants in this case:

> Garcia seeks prospective relief against the city in three forms: (1) declaratory relief that certain statutes and the city's ordinance are unconstitutional; (2) declaratory relief that city officials acted ultra vires in implementing and enforcing the ordinance, *see City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) ("ultra vires claimants are only entitled to prospective relief"); and (3) injunctive relief prohibiting future enforcement of certain statutes and the city's ordinance. Garcia also seeks retrospective relief through a claim for reimbursement of the civil penalty he paid and, alternatively, a claim for compensation for a constitutional taking of his money.

*Id.* at 207.

The Supreme Court held that Garcia lacked standing to raise prospective claims because he had not alleged any particularized interest in future enforcement of allegedly unconstitutional laws that differed in any way from the interest of a member of the public. *Id.* ("[H]aving paid his fine without arguing he will potentially break the law in the future, [Garcia] has no particularized interest in the issue distinguishable from a member of the public at large."). Garcia, like Dalton and Hussain, paid the penalty after receiving a notice of his red-light violation. *Id.* But he did not plead that he was "subject to any outstanding violation notices that would cause him imminent harm." *Id.* Nor did he plead or argue that he planned "to violate red-light laws in the future," or that he was subject to a continuing violation of his rights. *Id.* Recognizing that the threat of future enforcement for a future violation is insufficient to confer standing to challenge the constitutionality of a statute, the Supreme Court held that Garcia lacked standing to seek declaratory or injunctive relief or assert ultra vires claims. *Id.* at 207–08 (noting that for standing purposes, courts must assume plaintiffs will conduct activities within the law).

The same is true in this case. Dalton and Hussain are in the same procedural posture as Garcia: they paid their fines and did not allege any future or ongoing threat that was particularized to them as opposed to generally shared by members of the public. While Van Der Grinten did not specifically plead that he paid his fine—he pleaded that he appealed the notice of violation—he did not plead that he planned to

potentially break the law in the future or that he was subject to any ongoing threat to his rights. In addition, the red-light camera enforcement provisions of former chapter 707 have been repealed and replaced by a prohibition on red-light camera enforcement systems. Van Der Grinten, Dalton, and Hussain have no personal stake in the future application of the ordinance or the red-light camera enforcement systems because they are of no legal effect. We hold that Van Der Grinten, Dalton, and Hussain lack standing to assert their ultra vires claims, claims for declaratory relief, and request for an injunction. *See id.*

## III. The trial court lacked jurisdiction over the appellants' claims for retrospective relief.

### A. Governmental immunity bars Dalton's and Hussain's reimbursement claims because they did not pay the penalties under duress.

Dalton and Hussain argue on appeal that their reimbursement claims were not barred by governmental immunity because they paid the penalties under duress. The City contends that they did not pay under duress because they could have availed themselves of statutory, administrative remedies, but they did not.

Sovereign immunity is a common-law doctrine that protects the state from suit or liability unless there exists an express waiver of immunity. *See City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *Tooke v. City of Mexia*, 197 S.W.3d 325, 331–32 (Tex. 2006). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including

counties, cities, and school districts." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). "Political subdivisions of the state, including cities, share in Texas' inherent sovereign immunity." *Garcia*, 593 S.W.3d at 208. The Legislature may waive sovereign immunity, but because it is a common-law doctrine, it is "the judiciary's responsibility" "to determine under what circumstances sovereign immunity exists in the first instance." *Id.* at 208–09 (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006)).

A narrow exception to governmental immunity exists "when a plaintiff seeks reimbursement of an allegedly unlawful tax, fee, or penalty that was paid involuntarily and under duress." *Garcia*, 593 S.W.3d at 209; *see Dallas Cty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005) (holding that person who pays government fees and taxes under duress has valid claim for repayment). "Reimbursement of illegal fees and taxes is allowed, in essence, when the public entity compels compliance with a void law and subjects the person to punishment if he refuses or fails to comply." *Dallas Cty. Cmty. Coll. Dist*, 185 S.W.3d at 877.

Dalton and Hussain both received notices of violation and pleaded that they paid the penalties. In response to the appellees' plea to the jurisdiction, Dalton provided (1) a declaration in which he stated that he paid the penalty and (2) the letter in which he asserted that he was paying the penalty under duress. Neither Dalton nor Hussain appealed by seeking an administrative adjudication hearing or

de novo appeal to the municipal court. Both Dalton and Hussain sought reimbursement, and in response, the appellees asserted governmental and official immunity.[19]

Dalton and Hussain alleged that they paid the penalties under duress, but neither availed himself of the statutory, administrative remedies that would have automatically stayed the enforcement of their penalties. *See id.* In *Garcia*, the Texas Supreme Court recognized the narrow exception to governmental immunity, but it concluded that Garcia had paid the penalty voluntarily because he did not avail himself of statutory, administrative remedies that would have automatically stayed the enforcement of the penalty. 593 S.W.3d at 210. Like Garcia, Dalton and Hussain paid the penalty voluntarily, and the exception to governmental immunity does not apply to their reimbursement claims. *See id.*

### B.     The trial court lacked subject-matter jurisdiction over Dalton's and Hussain's takings claims.

As an alternative to their reimbursement claims, Dalton and Hussain pleaded takings claims under the Texas Constitution. "[G]overnmental immunity does not extend to relief sought for unconstitutional takings." *Id.* at 210–11 (citing *State v. Holland*, 221 S.W.3d 639, 643–44 (Tex. 2007) (acknowledging immunity does not

---

[19]     We do not address any arguments about official immunity because we have already held that the appellants all lack standing to assert ultra vires claims against the individual defendants. *See* TEX. R. APP. P. 47.1.

extend to claims based upon a taking under article 1, section 17 of the Texas Constitution)). But "a litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim." *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012).

In *Garcia*, the Texas Supreme Court pointed out that, although the statutory appeals process could not have resolved Garcia's constitutional claims that formed the basis for the takings claim, it could have resulted in a determination that Garcia did not need to pay the fine at all. 593 S.W.3d at 211 ("And the hearing officer might have agreed, for instance, that the city lacked authority to impose fines without completing the statutorily required traffic study."). The Court concluded that Garcia's failure to seek administrative relief before filing a takings claim deprived the district court of subject-matter jurisdiction. *Id.*

Like Garcia, Dalton and Hussain paid the red-light camera violation penalties without seeking administrative relief. Had they done so, they could have obtained a determination that they did not have to pay the penalties at all, which would have mooted their takings claims. Dalton's and Hussain's failure to seek administrative relief before filing their takings claims deprived the trial court of subject-matter jurisdiction. *See id.*

**C.** **Van Der Grinten lacked standing to assert a claim for reimbursement or a takings claim, and he did not properly plead a takings claim.**

Unlike Dalton and Hussain, Van Der Grinten sought administrative relief upon receiving the notice of violation from the City of Sugar Land. However, Van Der Grinten did not plead or aver that he paid the penalty, and at oral argument his counsel conceded that he did not pay it.

A person "who pays government fees and taxes under duress has a valid claim for their repayment." *Dallas Cty. Cmty. Coll. Dist.*, 185 S.W.3d at 877. "Reimbursement of illegal fees and taxes is allowed, in essence, when the public entity compels compliance with a void law and subjects the person to punishment if he refuses or fails to comply." *Id.* To establish a takings claim, a plaintiff "must prove (1) the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Gen. Services Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001). Common to both the reimbursement claim and the takings claim is the requirement that some money be paid to the government or something of value be taken by the government. *Dallas Cty. Cmty. Coll. Dist.*, 185 S.W.3d at 877; *Gen. Services Comm'n*, 39 S.W.3d at 598. Because Van Der Grinten did not pay the penalty, he lacks standing to bring a reimbursement or takings claim. *Perez*, 2019 WL 5243107, at *4.

At oral argument, Van Der Grinten suggested that he had standing to assert his takings claim because under the City's ordinance, it could place a hold on his

vehicle registration for his failure to pay the red-light camera violation penalty. However, Van Der Grinten did not plead or present jurisdictional evidence showing that the City placed a hold on his vehicle registration. "In the absence of a properly pled takings claim, the state retains immunity." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). Therefore, the court also lacked subject matter jurisdiction over Van Der Grinten's takings claim because it was not properly pled. *See id.*

## Conclusion

We overrule the appellants' issues, and we affirm the judgment of the trial court.


Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.