**Opinion issued August 26, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-24-00740-CV**

———————————

**TRINH T. HO, Appellant**

**V.**

**HARRIS COUNTY AND ANNETTE RAMIREZ, IN HER OFFICIAL CAPACITY AS HARRIS COUNTY TAX ASSESSOR-COLLECTOR, Appellees**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-28749**

---

**MEMORANDUM OPINION**

In this dispute over delinquent ad valorem taxes, Trinh T. Ho asserted

counterclaims against Harris County and Ann Harris-Bennett, in her official capacity

as Harris County Tax Assessor-Collector.[1] Both counter-defendants filed pleas to the jurisdiction arguing that Ho could not demonstrate that governmental immunity had been waived for her counterclaims. The trial court granted the pleas to the jurisdiction and dismissed Ho's counterclaims.

In two issues on interlocutory appeal, Ho contends that (1) the trial court erred by granting Harris County's plea to the jurisdiction because Ho's counterclaim sought monetary damages as an offset to the affirmative claim Harris County asserted against her; and (2) the trial court erred by granting Harris-Bennett's plea to the jurisdiction because Ho alleged *ultra vires* actions and a takings claim for which immunity was waived.

We affirm.

## Background

In 2021, Harris County, on behalf of itself and several other taxing units,[2] filed suit against Williams Walls seeking approximately $8,000 in unpaid property taxes, penalties, and interest for a specific property for the 2002 through 2006 tax years.

---

[1] Ann Harris-Bennett's term of office ended on December 31, 2024. We substitute her successor in office, Annette Ramirez, in her official capacity as Harris County Tax Assessor-Collector, as appellee.

[2] Harris County sued on its own behalf and on behalf of the Harris County Department of Education, the Port of Houston Authority of Harris County, the Harris County Flood Control District, and the Harris County Hospital District. The City of Houston, the Houston Independent School District, and the Houston Community College System were also named as plaintiffs.

The petition also named Ho as a defendant "In Rem Only."[3] Harris County sought foreclosure of its liens against the property securing the amount of all delinquent taxes and "personal judgment against Defendant(s) who owned the property on January 1 of the year for which the taxes were imposed for all taxes, penalties, interest, and costs that are due or will become due on the property." In its prayer for relief, Harris County stated that it did not "pray for personal judgment against any defendant(s) identified in paragraph I as IN REM ONLY."

Ho answered and asserted her own affirmative claims. In her third amended counterpetition, she asserted a counterclaim against Harris County and a third-party claim against Ann Harris-Bennett, then the Harris County Tax Assessor-Collector.[4] Ho alleged that Harris-Bennett "engag[ed] in prosecuting wrongful claims against [Ho] in the underlying lawsuit," "engaged in ultra vires acts and conduct in suing Trinh T. Ho for an alleged debt that is invalid, discharged, barred and/or is invalid under the statutes, doctrines or common-law of the State of Texas," and had "actual

---

[3]     The petition also named the United States as a defendant "In Rem Only" to foreclose a federal tax lien on the property.

[4]     Ho also named as counter-defendants City of Houston Mayor John Whitmire, Houston Independent School District Superintendent Mike Miles, Houston Community College System Chancellor Margaret Ford Fisher, the Houston Community College System, the City of Houston, the Houston Independent School District, and Linebarger Goggan Blair & Sampson, LLP, the law firm that filed Harris County's suit against her. It is unclear whether any of these counter-defendants have answered or appeared. None of these counter-defendants are parties to this appeal.

knowledge of the lack of merits of [Harris County's] delinquent tax claims, and/or [was] consciously indifferent to the facts of the claim." Ho alleged that she had paid the subject taxes under duress.

Ho asserted the following causes of action:

Wrongful Debt Collection

27.    Counter-defendants have initiated the underlying lawsuit to recover for alleged delinquent taxes on the Property while, at all times material, Counter-defendants had personal and/or constructive knowledge that the alleged delinquent taxes are not subject to judicial enforcement and/or collection through the legal process. Each Counter-defendant and/or his or her predecessor had actual and/or constructive knowledge of the numerous prior prosecutions for delinquent taxes which resulted in final judgments and involved the same parties.

Declaratory Relief

28.    Pursuant to Chapter 37.001, et. seq. Texas Civil Practice and Remedies Code, (Uniform Declaratory Judgments Act), Counter-plaintiff requests this Court declare that, at all times material, Ann Harris Bennett was, and is continuing to, act outside the scope of her official duties in filing and prosecuting the underlying delinquent tax suit as a matter of law. Counter-plaintiff requests this Court declare that Counter-defendants do not have the authority to proceed with this or future lawsuits involving the subject matter of this cause.

29.    Counter-plaintiff requests that this Court also enter an injunction against Counter-defendants from filing future tax delinquent suits or collecting the ta[x]es that Counter-defendants may allege are due on [a specific tax account.]

Quiet Title

30.    By filing the underlying delinquent tax suit Counter-defendants have slandered Counter-plaintiff's quiet and peaceable possession of the subject Property and Counter-plaintiff requests

4

> declaratory relief as to the rights and obligations of the parties to the Plaintiffs' claims in the underlying lawsuit.

> Takings Clause

> 31. As a result of Counter-defendants' acts as set out above Counter-plaintiff is being subjected to seizure and deprivation of her right, title and ownership of the Property subject to the underlying lawsuit in violation of Counter-plaintiff's protection under the 5th Amendment of the Constitution of the United States.

Ho sought damages of "at least $9,172.60," as well as an order that the counter-defendants reimburse her for the taxes she paid under duress.

Harris County and Harris-Bennett answered and asserted governmental and official immunity. They also filed separate pleas to the jurisdiction asserting governmental immunity. In its plea, Harris County argued that Ho could not use the Declaratory Judgments Act as a waiver of immunity, and it further argued that Ho could not seek declaratory relief when the Tax Code applied because those remedies are mandatory and exclusive. Harris-Bennett argued that Ho could present no evidence that she engaged in an *ultra vires* act because the Tax Code authorizes the county tax assessor-collector to assess and collect taxes on property located within the county, and Harris-Bennett was acting within the scope of her duties by assessing taxes against Ho's property.

In response, Ho argued that Harris County and Harris-Bennett had "prosecuted delinquent tax claims against the party defendants numerous times over delinquent taxes" leading to final judgments. She requested a declaration that Harris

5

County's claims against her were barred by res judicata and a declaration striking the tax account of the subject property from Harris County's tax rolls. She also sought injunctive relief barring the filing of future legal proceedings "for the omitted improvements" subject to the tax account. She argued that Harris County's immunity had been waived to the extent she sought to offset the county's affirmative claims against her. Ho further argued that Harris-Bennett was "wrongfully holding funds which were paid under duress" and had "wrongfully filed suit contravening the doctrine of res judicata and is continuing to prosecute this lawsuit having actual knowledge of the prior tax delinquency suits involving the same parties and the same property." Ho did not attach supporting evidence.

The trial court signed separate orders granting the pleas to the jurisdiction filed by Harris County and Harris-Bennett. Harris County's claim against Ho remains pending. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (allowing interlocutory appeal from order granting or denying plea to jurisdiction filed by governmental unit).

**Waiver of Governmental Immunity**

In two issues, Ho challenges the trial court's rulings granting the pleas to the jurisdiction filed by Harris County and Harris-Bennett. In her first issue, Ho contends that Harris County's immunity from suit was waived because she brought her claim as a counterclaim in response to Harris County seeking affirmative

6

monetary relief from her. In her second issue, Ho contends that Harris-Bennett's immunity was waived because she alleged *ultra vires* actions and asserted a takings claim, but Harris-Bennett offered no evidence to disprove the claims.

## A. Standard of Review

Sovereign immunity protects the State against lawsuits for damages unless the State consents to be sued. *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022). Governmental immunity provides similar protection to political subdivisions of the State, including counties. *Id.* at 284; *City of Houston v. Branch*, 695 S.W.3d 580, 586 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (en banc) (op. on reh'g). A suit against a governmental official in her official capacity is "just another way of pleading a suit against a governmental agency of which the official is an agent." *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ). Thus, if the governmental agency is entitled to governmental immunity, so too is the governmental official. *Id.*; *see Robbins v. Lostracco*, 578 S.W.3d 130, 134 (Tex. App.—Tyler 2019, pet. denied).

Immunity from suit, which bars a suit against the State unless it has consented to the suit, "presents a jurisdictional question of whether the State has expressly consented to suit." *Gulf Coast Ctr.*, 658 S.W.3d at 284. In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the trial court's

jurisdiction over the case by establishing a valid waiver of immunity. *Id.*; *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

A governmental unit may assert immunity from suit through several procedural vehicles, including a plea to the jurisdiction. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* When the jurisdictional plea challenges the pleadings, we must determine if the pleader has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id.* When the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of the pleader's claim. *Id.* at 770–71.

Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When the plea to the jurisdiction challenges the pleadings, we must construe the pleadings liberally and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and we should afford the pleader an opportunity to amend. *Id.*

8

at 226–27. If the pleadings affirmatively negate jurisdiction, then the plea may be granted without allowing the pleader an opportunity to amend. *Id.* at 227.

## B.     Harris County's Immunity From Suit

Ho's argument as to Harris County boils down to the proposition that a governmental entity may permissibly be sued on counterclaims that are "germane to, connected with, and properly defensive to" affirmative claims for monetary relief asserted by the entity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 376–77 (Tex. 2006) (op. on reh'g).

Harris County acknowledges this proposition but contends that this Court has already found the *Reata* principle inapplicable to a suit to recover delinquent taxes. In *Waller County v. Simmons*, a panel of this Court held that such a tax suit does not seek money damages but rather seeks foreclosure of a lien: "Because the suit brought by the governmental unit is not one for monetary damages, governmental immunity is not waived under *Reata II*." *See* No. 01-07-00180-CV, 2007 WL 3038420, at *3 (Tex. App.—Houston [1st Dist.] Oct. 18, 2007, no pet.) (mem. op.). The *Simmons* Court thus upheld the immunity of the governmental unit.

In reply, Ho says that the pertinent language in *Simmons* was dicta and has never been cited by later courts. Ho also says that the Dallas Court of Appeals has gone the other way. *See Linbeck Constr. Co. v. City of Grand Prairie*, 293 S.W.3d 896, 899 (Tex. App.—Dallas 2009, pet. denied) (disagreeing that "a suit for

9

foreclosure of property owned by a government is not, for governmental immunity purposes, the equivalent of a suit for money damages against the governmental entity" because in both situations "the plaintiff seeks money through an order from a court"). Based on the Dallas decision, Ho concludes that "Texas law is not settled whether an *in rem* claim by or against a governmental entity constitutes a claim for monetary damages."

Ho's answers to *Simmons* do not persuade us. First, Ho's only reason for calling the language dicta is that the opinion contained an alternate holding. But alternate holdings do not ipso facto lack precedential force. *See Casparis v. Fid. Union Cas. Co.*, 65 S.W.2d 404, 406 (Tex. Civ. App.—Austin 1933, writ ref'd); *see also State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 554–55 (Tex. 2004) (op. on reh'g) (concluding that supreme court had "conflicts jurisdiction" over interlocutory appeal when alternate holding of intermediate appellate court conflicted with earlier decision from supreme court). Second, *Simmons* does not derive its precedential force from the number of times another court has cited it. Frequency of citation might relate to reliance interests and to arguments about whether *Simmons* should be overruled, but not to whether we should follow it in the first instance. Nor does it matter that the Dallas Court may see things differently. Such a fact would not make *Simmons* disappear. That another court disagrees might

bear on whether the Texas Supreme Court wishes to weigh in on the issue, but it does not mean that this panel should depart from First Court precedent.

Ho's argument as to Harris County is foreclosed by *Simmons*: Harris County's suit against her is not a claim for monetary damages—which might implicate the limited waiver of immunity discussed in *Reata*—but is instead a suit for foreclosure of a lien. *See* 2007 WL 3038420, at *3. Accordingly, the trial court did not err by granting Harris County's plea to the jurisdiction.

We overrule Ho's first issue.

## C.    Tax Assessor-Collector's Immunity From Suit

### 1.    *Ultra Vires* Claims

Even if the Legislature has not waived immunity for the governmental entity, a plaintiff can bring a claim against a governmental official if the official engages in *ultra vires* conduct. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018); *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). These claims must be brought against the governmental official in her official capacity, not against the governmental entity. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009).

A plaintiff bringing an *ultra vires* claim must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial

11

act." *Houston Mun. Emps. Pension Sys.*, 549 S.W.3d at 576 (quoting *Heinrich*, 284 S.W.3d at 372). A governmental official "with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016); *see Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022) ("[A]n *ultra vires* claim may not be maintained if the officials' acts are within their discretion; the plaintiff must show that the officers failed to perform a purely ministerial act or acted *outside* the scope of their allotted discretion."). An *ultra vires* claim depends "on the scope of a state official's authority." *Hall*, 508 S.W.3d at 234.

"Ministerial acts are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quotations omitted). Discretionary acts, on the other hand, require the exercise of judgment and personal deliberation. *Id.* An act within an official's discretion is "protected by immunity even if it is erroneous," but an official generally has "no discretion to misinterpret the law." *Jones*, 646 S.W.3d at 325.

Retrospective monetary claims are generally barred in *ultra vires* suits. *Houston Mun. Emps. Pension Sys.*, 549 S.W.3d at 576; *see Heinrich*, 284 S.W.3d at 374 ("[T]he basis for the *ultra vires* rule is that a governmental official is not

following the law, so that immunity is not implicated, but because the suit is, for all practical purposes, against the state, its remedies must be limited."). *Ultra vires* claimants are only entitled to prospective relief. *Houston Mun. Emps. Pension Sys.*, 549 S.W.3d at 576; *see Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 345 ("Only *prospective* injunctive relief is available on an *ultra vires* claim."). "If the injury has already occurred and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie." *Houston Mun. Emps. Pension Sys.*, 549 S.W.3d at 576.

## 2. Takings Claim

Both the United States and Texas Constitutions prohibit the taking of a person's property for public use without payment of just compensation. *See* U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation."); TEX. CONST. art. I, § 17 ("No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ."). If the government appropriates private property without paying adequate compensation, the property owner may recover damages in an inverse condemnation suit. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992); *Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 192 (Tex. App.—Houston [1st Dist.] 2021, no pet.). "An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes

with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development." *Westgate*, 843 S.W.2d at 452; *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998) ("Takings can be classified as either physical or regulatory takings."); *Town Park Ctr.*, 639 S.W.3d at 192 (stating that regulatory taking can occur when governmental agency imposes restrictions that deny property owner all economically viable use of its property).

Sovereign and governmental immunity do not protect the government from liability for compensation under the takings clause. *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016) (op. on reh'g); *Town Park Ctr.*, 639 S.W.3d at 193. "To defeat a plea to the jurisdiction, the plaintiff need only plead sufficient facts to show the elements of a takings claim." *Town Park Ctr.*, 639 S.W.3d at 193. "In the absence of a properly pled takings claim, the state retains immunity." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

"All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." TEX. CONST. art. VIII, § 1(b). Similarly, the Tax Code provides that "[a]ll real and tangible personal property that this state has jurisdiction to tax is taxable unless exempt by law." TEX. TAX CODE

§ 11.01(a). Texas "has jurisdiction to tax real property if located in this state." *Id.* § 11.01(b).

The county tax assessor-collector "shall assess and collect taxes on property in the county for the county" and for other taxing units in the county.[5] *Id.* § 6.23(a). The tax assessor "for each taxing unit shall prepare and mail a tax bill to each person in whose name the property is listed on the tax roll and to the person's authorized agent." *Id.* § 31.01(a). "At any time after its tax on property becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both." *Id.* § 33.41(a); *see id.* § 31.02(a) (providing that with some limited exceptions, "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year following the year in which imposed").

---

[5] The tax assessor-collector "shall also assess and collect taxes on property for another taxing unit" aside from the county if one of four statutory requirements is met: (1) the law creating or authorizing the unit requires it to use the county tax assessor-collector for the taxes it imposes in the county; (2) the law creating or authorizing the unit does not mention who assesses or collects its taxes and the unit imposes taxes in the county; (3) the governing body of the unit requires the county to assess and collect its taxes; or (4) an intergovernmental contract requires the tax assessor-collector to assess and collect the taxes imposed by the unit. TEX. TAX CODE § 6.23(a). Ho does not allege or argue that the Harris County Tax Assessor-Collector was not authorized to assess and collect taxes on behalf of any of the taxing units represented by Harris County in the tax delinquency suit, such as, for example, the Harris County Department of Education or the City of Houston.

15

### 3. Analysis

After a review of Ho's pleading, we cannot discern any plausible claim for *ultra vires* acts or for a taking. Ho alleges that the tax assessor-collector sued her "for delinquent taxes." Nothing in such a suit would appear to support a viable *ultra vires* claim on Ho's part. A tax assessor-collector is statutorily authorized, on behalf of the taxing units she serves, to assess and collect taxes on real property located within the taxing units' jurisdiction. Moreover, taxing units may file suit to foreclose a lien after taxes become delinquent. Ho alleges no specific statutory violation by the tax assessor-collector, nor does she allege that the tax assessor-collector acted outside of any specific statutory authority. *See Houston Mun. Emps. Pension Sys.*, 549 S.W.3d at 576 (stating that plaintiff bringing *ultra vires* claim must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act") (quotations omitted); *see also Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (stating that plaintiff must "allege facts affirmatively demonstrating actionable ultra vires conduct by state officials in order to avoid dismissal on jurisdictional grounds due to sovereign immunity").

Although Ho goes on to allege that the tax suit suffers from a "lack of merits" and "the alleged delinquent taxes are not subject to judicial enforcement and/or collection through the legal process," that allegation fares no better. If in fact the tax suit lacks merit, litigation of the tax suit should bring that conclusion to light in due

course, and there is nothing to be gained from a counterclaim premised on the proposition that the tax suit ought to fail.

As for the takings claim, Ho's live pleading provides nothing more than a bare conclusion, stated in a single sentence, that the various acts "set out above" amount to a seizure and deprivation of her property in violation of the Fifth Amendment. That one sentence is literally all there is to the takings claim. Nothing in that sentence alleges any facts that affirmatively show jurisdiction. *See Matzen*, 659 S.W.3d at 389 (stating that "[i]f additional facts would be necessary . . . to state a viable claim falling within a waiver or exception to immunity, then the plaintiff has not affirmatively demonstrated the court's jurisdiction"). On appeal, Ho cites no authority supporting her contention that a pending suit seeking recovery of allegedly delinquent taxes—even if the delinquency suit is ultimately not meritorious—can form the basis for a takings claim under the Fifth Amendment.

For these reasons, neither the *ultra vires* claim nor the takings claim is viable. The trial court properly sustained the tax assessor-collector's plea to the jurisdiction. The only remaining question is whether Ho should have an opportunity to replead. A party normally "deserves the opportunity to amend his pleadings if the defects can be cured." *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007); *see Von Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022) ("[S]o long as petitioners' pleading does not affirmatively demonstrate the absence of jurisdiction,

they should be given an opportunity to amend."). That is, in general, "a plaintiff deserves a reasonable opportunity to amend unless the pleadings affirmatively negate the existence of jurisdiction." *Koseoglu*, 233 S.W.3d at 839 (quotations omitted). But where repleading cannot cure the defect, repleading serves no purpose and need not be allowed. *Id.* at 840.

The parties' briefing casts very little light on that issue. Neither side has gone into any detail about whether the defect could be cured. Accordingly, because Harris County's claims against Ho remain pending in the trial court and litigation between the parties will continue regardless of our disposition of this interlocutory appeal, we will not hold that Ho is barred from repleading. We hold only that the trial court ruled correctly in sustaining the plea to the jurisdiction based on Ho's live pleading.

## Conclusion

We affirm the trial court's orders granting the pleas to the jurisdiction.


David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.